DECISION AND JUDGMENT ENTRY
{¶ 1} Michael Woodfork appeals the trial court's denial of his motion to suppress the marijuana that a police officer discovered in his vehicle during an inventory search after Woodfork's arrest for driving with a suspended license. Woodfork contends that the court should have suppressed the evidence because he possessed a valid driver's license at the time of his arrest and the Bureau of Motor Vehicles' (BMV) records the arresting officer relied upon in stopping and arresting him were erroneous. Woodfork further contends that he provided the officer with a copy of a BMV letter indicating that his driving privileges had been restored, and thus he should have been free to leave. The State disputes Woodfork's claim that he showed the letter to the officer. However, even assuming she reviewed the letter, the officer asked for and received confirmation from the BMV that the license was suspended. Because the letter was dated nearly two months prior to Woodfork's arrest, we conclude that the officer reasonably relied on the current information provided to her by the BMV rather than the letter, which could have been outdated. Since the officer had probable cause to arrest Woodfork based on the information provided by the BMV that he was driving with a suspended license, the impoundment and inventory search of Woodfork's vehicle was lawful. Thus, we conclude that even where the underlying factual premise for the arrest turns out to be false, if the circumstances present an objectively reasonable basis to establish probable cause, the seizure is valid for Fourth Amendment purposes.
 {¶ 2} Officer Twila Goble was on routine patrol in the early morning hours one day in May 2003. According to Officer Goble's testimony at the hearing on the motion to suppress, she was traveling behind a vehicle when she observed it "roll" through a stop sign. She followed the vehicle and requested a license plate check through the dispatcher, who responded that it was registered to Woodfork and that his driver's license was suspended. Officer Goble stopped the vehicle, advised Woodfork of the reason for the stop, and requested his driver's license. Woodfork provided a hard copy of his license and Officer Goble then requested a "hand check" of the BMV records to determine if the license was valid. Apparently, the "hand check" is a more accurate records check whereby a BMV employee actually pulls the license holder's file. The "hand check" confirmed that Woodfork's license was suspended.
 {¶ 3} Officer Goble placed Woodfork under arrest for driving with a suspended license, and she and Sergeant Tom Cunningham began inventorying Woodfork's vehicle so it could be impounded. Sergeant Cunningham testified that impounding a vehicle is standard procedure when there is only one occupant in a vehicle and he or she is arrested. During the inventory search, Sergeant Cunningham discovered a plastic grocery bag full of marijuana.
 {¶ 4} Woodfork denied that he "rolled" through the stop sign. He introduced the testimony of two witnesses who stated that they drove by Woodfork and waved to him while he was stopped at the stop sign with a police car behind him. They both testified that Woodfork was at a complete stop when they saw him.
 {¶ 5} Woodfork also introduced evidence that his driver's license was not actually suspended at the time Officer Goble stopped him. Although his insurance company notified the BMV that his insurance would be suspended shortly due to non-payment, he paid his insurance bill and his coverage never actually lapsed. His insurer notified the BMV of the payment and Woodfork's license was not suspended due to failure to have insurance. Apparently, the BMV failed to update its records in a timely manner and, at the time of the traffic stop, the records erroneously reflected that Woodfork's license was suspended. Woodfork testified that he provided Officer Goble with a copy of a letter from the BMV dated March 4, 2003, indicating that his driving privileges had been restored and instructing him to "carry this letter for 30 days while our computer records are updated." Nonetheless, Officer Goble arrested him for driving with a suspended license.
 {¶ 6} A grand jury indicated Woodfork on one count of possession of marijuana in violation of R.C. 2925.11, a third degree felony. After the trial court denied his motion to suppress the marijuana discovered in the vehicle, Woodfork pled no contest to the charge and the court sentenced him to three years incarceration.
 {¶ 7} Woodfork now appeals, assigning the following error:
Assignment of Error Number One
The Trial Court erred in overruling the motion to suppress.
 {¶ 8} Appellate review of a trial court's decision regarding a motion to suppress involves mixed questions of law and fact. See State v.Featherstone, 150 Ohio App.3d 24, 2002-Ohio-6028, 778 N.E.2d 1124, at ¶ 10, citing State v. Vest, Ross App. No. 00CA2576, 2001-Ohio-2394; Statev. Long (1998), 127 Ohio App.3d 328, 332, 713 N.E.2d 1. When ruling on a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate witness credibility. See State v. Dunlap, 73 Ohio St.3d 308, 314,1995-Ohio-243, 652 N.E.2d 988; State v. Fanning (1982), 1 Ohio St.3d 19,20, 437 N.E.2d 583. Accordingly, a reviewing court must defer to the trial court's factual findings if competent, credible evidence exists to support those findings. See Dunlap; Long; State v. Medcalf (1996),111 Ohio App.3d 142, 675 N.E.2d 1268. The reviewing court then must independently determine, without deference to the trial court, whether the trial court properly applied the substantive law to the facts of the case. See Featherstone; State v. Fields (Nov. 29, 1999), Hocking App. No. 99CA11.
 {¶ 9} The Fourth Amendment to the United States Constitution protects individuals against unreasonable governmental searches and seizures. See, e.g., United States v. Arvizu (2002), 534 U.S. 266, 122 S.Ct. 744,151 L.Ed.2d 740; Terry v. Ohio (1968), 392 U.S. 1, 9, 88 S.Ct. 1868,20 L.Ed.2d 889. "Searches conducted outside the judicial process, without prior approval by a judge or magistrate, are per se unreasonable under theFourth Amendment — subject only to a few specifically established and well-delineated exceptions." Katz v. United States (1967), 389 U.S. 347,357, 88 S.Ct. 507, 19 L.Ed.2d 576. Once the defendant demonstrates that he was subjected to a warrantless search or seizure, the burden shifts to the State to establish that the warrantless search or seizure was constitutionally permissible. See Maumee v. Weisner, 87 Ohio St.3d 295,297, 1999-Ohio-68, 720 N.E.2d 507; Xenia v. Wallace (1988),37 Ohio St.3d 216, 52 N.E.2d 889, paragraph two of the syllabus.
 {¶ 10} In denying the motion to suppress, the trial court acknowledged that Woodfork and the State presented contradictory testimony as to whether Woodfork stopped at the stop sign. Without deciding that issue, the court found that Officer Goble was justified in stopping Woodfork based solely on the dispatcher's notification that his license was suspended. The court also found that the BMV records information provided to Officer Goble at the time of the stop was incorrect and that Woodfork's driver's license was not suspended at that time. But, the court concluded that Officer Goble relied in good faith on the information transmitted to her by the BMV when she arrested Woodfork for driving while under suspension. Because Officer Goble had a reasonable belief that she was authorized to arrest Woodfork, the arrest was valid, the inventory of his vehicle after the arrest was permissible, and the evidence gathered from that search was properly seized.
 {¶ 11} Woodfork argues that, assuming Officer Goble was justified in stopping him based on the dispatcher's notification that he was driving with a suspended license, his production of a driver's license and the letter from the BMV reflecting the reinstatement of his driving rights should have put Officer Goble on notice that the information provided by the BMV was incorrect. Woodfork contends that because he could not have been arrested solely for failing to stop at a stop sign, a minor misdemeanor, Officer Goble should have released him.
 {¶ 12} Initially, we agree with the trial court that Officer Goble legally stopped Woodfork based solely on the fact that the dispatcher informed her that his driver's license was suspended, even if he did not fail to stop at a stop sign. In State v. Yeager (Sept. 24, 1999), Ross App. No. 99CA2492, we held that an officer's investigative stop of an automobile is justified solely on the basis of information that the vehicle's owner does not possess a valid driver's license absent evidence that the owner is not the driver of the vehicle. Therefore, Officer Goble had a proper basis to stop Woodfork.
 {¶ 13} Relying on State v. Chatton (1984), 11 Ohio St.3d 59,463 N.E.2d 1237, Woodfork argues that the trial court erred in concluding that his continued detention was legal even after he provided Officer Goble with the letter from the BMV.
 {¶ 14} In Chatton, a police officer stopped a vehicle that he believed displayed neither front nor rear license plates; however, upon approaching the vehicle, he observed a temporary tag in the vehicle's rear window. Nonetheless, the officer requested Chatton's license and registration. A license check revealed that Chatton's license was suspended, but this information was ultimately determined to be incorrect. The officer arrested Chatton for driving with a suspended license and, during a search of the vehicle, discovered a gun under the driver's seat. Chatton pled no contest to carrying a concealed weapon. The Ohio Supreme Court held that the gun seized from the vehicle was inadmissible under the Fourth Amendment to the United States Constitution. 11 Ohio St.3d at 63. The Court concluded that once the officer observed the temporary tag through the windshield, Chatton should not have been detained further to determine the validity of his driver's license absent some specific and articulable facts that the continued detention was reasonable. Id.
 {¶ 15} Here, the trial court found that the BMV letter was insufficient to put Officer Goble on notice that Woodfork's driver's license was valid. The court noted that there was disagreement as to whether Woodfork even showed the letter to Officer Goble. The court further recognized that the letter was dated March 4, 2003, and Officer Goble stopped Woodfork nearly two months later. The court found that, because the bold face type at the bottom of the letter instructs the recipient that it is only necessary to carry the letter for thirty days while the BMV computers are updated, Officer Goble could have reasonably concluded that the information the BMV provided to her during the "hand check" was more up to date than the information contained in the letter and Woodfork's driver's license was actually suspended.
 {¶ 16} We conclude, based on the totality of the circumstances, that the BMV letter was not sufficient to put a reasonable officer on notice that Woodfork's license was valid. Thus, his continued detention was not improper. In Chatterly, the officer immediately realized he had erroneously concluded that the vehicle did not have tags when he exited his cruiser and began approaching the stopped car. In spite of the letter, Officer Goble could not have known that the BMV information was erroneous. Even if Woodfork's driving privileges had been restored effective March 2nd, they could have been suspended again thereafter. Because more than thirty days had passed since the date of the letter, Officer Goble could reasonably conclude that the information contained in the letter had been entered into the BMV computer system but a new license suspension occurred thereafter. We find Chatterly to be distinguishable.
 {¶ 17} Probable cause to arrest exists when there is a reasonable ground for suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious person in the belief that an individual is guilty of the offense with which he or she is charged. State v. Otte,74 Ohio St.3d 555, 1996-Ohio-108, 660 N.E.2d 711, citing State v. Timson
(1974), 38 Ohio St.2d 122, 311 N.E.2d 16. A court must determine whether the officer had probable cause to arrest an individual by examining the facts known at the moment of arrest. Beck v. Ohio (1964), 379 U.S. 89, 91,85 S.Ct. 223, 13 L.Ed.2d 142.
 {¶ 18} Information an officer receives over a police radio must ordinarily be considered trustworthy. State v. Fields (Dec. 2, 1996), Athens App. No. 96CA1742. See, also, State v. Kuno (1976),46 Ohio St.2d 203, 205-206, 346 N.E.2d 768 (information radioed to a highway patrol officer that a particular truck is overweight, even if erroneous, is sufficient to support an arrest); State v. Cunningham (May 3, 1995), Ross App. No. 94CA2023 (contents of BMV report received via police radio provided basis for stop). Moreover, a police officer's mistake of fact will not lead to the suppression of evidence where the mistake was "understandable" and a reasonable response to the situation facing the officer. Hill v. California (1971), 401 U.S. 797, 804,91 S.Ct. 1106, 28 L.Ed.2d 484. See, also, Fields.
 {¶ 19} While the probable cause standard requires more certainty than the reasonable suspicion requirement, it does not require scientific certainty. Thus, even where the underlying factual premise for the arrest turns out to be false, if the circumstances present an objectively reasonable basis to establish probable cause, the arrest passes constitutional muster. Officer Goble received information from the dispatcher that Woodfork was driving with a suspended license. She even double-checked this information through the BMV to ensure its accuracy before arresting Woodfork. Although the information ultimately proved to be inaccurate, Officer Goble had probable cause to arrest Woodfork at the time of the stop and acted reasonably based on the information she had.
 {¶ 20} An inventory search of a lawfully impounded vehicle is a well-defined exception to the warrant requirement of the Fourth Amendment to the United States Constitution. Colorado v. Bertine (1987),479 U.S. 367, 371, 93 L.Ed.2d 739, 107 S.Ct. 738; South Dakota v.Opperman (1976), 428 U.S. 364, 367, 49 L.Ed.2d 1000, 96 S.Ct. 3092. The exception derives from the three-fold purpose of protecting the owner's property while in police custody, protecting the police from claims over lost or stolen property, and protecting the police from potential danger. Opperman, 428 U.S. at 369. In order to be valid, however, the search must be conducted in accordance with standard police procedure and not as a subterfuge for an evidentiary search. Id. at 376.
 {¶ 21} Sergeant Cunningham testified that it is standard procedure to impound a vehicle when the driver is the sole occupant of the vehicle and he is arrested. Woodfork did not allege that the impoundment of his vehicle was done solely for purposes of an evidentiary search and does not challenge the search itself on appeal. Therefore, we conclude that the officers properly impounded and searched Woodfork's vehicle following his arrest.
 {¶ 22} Because we have concluded that the stop, arrest, and search of Woodfork's vehicle were lawful, we overrule his sole assignment of error and affirm the trial court's judgment.
Judgment affirmed.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that the Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Ross County Common Pleas Court to carry this judgment into execution.
IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Ohio Supreme Court an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Abele, P.J. McFarland, J.: Concur in Judgment and Opinion.