[Cite as *State v. Butler*, 2012-Ohio-2902.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|                          |   |                            |
|--------------------------|---|----------------------------|
| STATE OF OHIO            | : | JUDGES:                    |
|                          | : |                            |
|                          | : | Hon. Patricia A. Delaney, P.J. |
| Plaintiff-Appellee       | : | Hon. William B. Hoffman, J. |
|                          | : | Hon. Julie A. Edwards, J.  |
| -vs-                     | : |                            |
|                          | : | Case No. 11CAA100092       |
| TYWHON L. BUTLER         | : |                            |
|                          | : |                            |
|                          | : |                            |
| Defendant-Appellant      | : | O P I N I O N              |


CHARACTER OF PROCEEDING:      Appeal from the Delaware County Court of
                              Common Pleas, Case No. 10CR-I-04-0254


JUDGMENT:                     AFFIRMED


DATE OF JUDGMENT ENTRY:       June 22, 2012


APPEARANCES:

For Appellant:                        For Appellee:

WILLIAM T. CRAMER                     CAROL O'BRIEN
470 Olde Worthington Rd., Ste. 200    DELAWARE COUNTY PROSECUTOR
Westerville, OH 43082
                                      DOUGLAS DUMOLT
                                      140 N. Sandusky St., 3rd Floor
                                      Delaware, OH 43015

*Delaney, J.*

{¶1} Appellant Tywhon L. Butler appeals from the judgment of the Delaware County Court of Common Pleas overruling his motion to suppress. This appeal is related to *State v. Marcus A. Pickens*, Fifth District Court of Appeals, Delaware County case number 11CAA90085. Appellee is the state of Ohio.

### FACTS AND PROCEDURAL HISTORY

{¶2} The following facts are adduced from a two-part suppression hearing. The state's testimonial evidence at the suppression hearing came from two witnesses: Detective Jason Doty of the Delaware Police Department, whose investigation and surveillance led to the traffic stop challenged in this appeal, and Sgt. Larry Dore of the Delaware County Sheriff's Department, who performed the traffic stop upon information provided by Doty.

### *Surveillance of Steven Simpkins*

{¶3} This case arose when law enforcement targeted an individual named Steven Simpkins for investigation. Simpkins is a black male with a light complexion; he is described as less than six feet tall and weighs approximately 180 pounds.

{¶4} Over the course of two days in April, 2010, Detective Jason Doty conducted surveillance on Simpkins throughout Marion, Columbus, and Delaware County, Ohio. Doty had located a vehicle he believed Simpkins drove, but he had not actually seen Simpkins. Doty learned the address of Simpkins' girlfriend, Chiquita Brown, and officers decided to watch the house.

{¶5}   On April 22, 2010, Doty looked for Simpkins in Marion, Ohio.  On West Center Street,[1] Doty saw a black male come out of a house wearing a black cap, white shirt, and black pants.  Doty took pictures of this individual, and another detective, Detective Cox, identified the man in the pictures as Simpkins.

{¶6}   Doty was not personally familiar with Simpkins and did not recognize him on sight; therefore he showed the picture to Cox for confirmation of Simpkins' identity.  Cox also told Doty Simpkins had a warrant for his arrest.

{¶7}   Doty took several pictures of Simpkins as he walked down the street. Eventually Simpkins was picked up by someone driving a Chevy Malibu.  Chiquita Brown was known to drive a Malibu.  Doty lost sight of Simpkins and the Malibu briefly.

{¶8}   Doty then followed the Malibu to East Mark Street, where it stopped at the house known to be Chiquita Brown's.  He did not see the occupants of the Malibu get out and go inside, but they did because the car was empty.  Doty set up surveillance on Brown's house, waiting for the black male to leave.

{¶9}   As he watched, Doty saw a "smaller vehicle," later described as a black Hyundai, drive eastbound on East Mark Street and perform a U-turn in front of Brown's house.  A black male came out of the house wearing a black cap, white shirt, and black pants.  This individual got into the right front passenger seat of the car and it drove away.  Doty, trying not to attract attention, did not look into the car as it passed him and was therefore unable to describe the occupants of the car.

---

[1] Testimony on this point is confusing to this Court, just as it was to the trial court.  It is unclear ether Doty initially saw the subject exit a house on West Mark Street or West Center Street, but this point ultimately proves insignificant in the analysis.

{¶10} Doty radioed to other officers in the area that Simpkins was in the car, leaving the area, and the surveillance team began to follow the car through Marion, southbound on U.S. Route 23 to the city of Delaware. At one point the car stopped and picked up another black male dressed in all red that got into the rear left passenger seat.

{¶11} Doty advised the Delaware County Sheriff's Office by radio that Simpkins was in the right front passenger seat of the car and had a warrant for his arrest for robbery. Doty and the surveillance team wanted sheriff's deputies to make the stop so their surveillance vehicles would not be detected. Doty personally stayed out of the area when the traffic stop was made and did not see the stop effectuated.

*The Traffic Stop*

{¶12} Sgt. Larry Dore of the Delaware County Sheriff's Department was working on April 22, 2010, when he heard a call on the radio from the Simpkins investigators. The information Sgt. Dore received was that an individual named Simpkins, a black male, was a passenger in the right front seat of a maroon[2] vehicle southbound on U.S. Route 23, and Simpkins had a warrant for robbery.

{¶13} Sgt. Dore spotted the vehicle and saw it pull into a gas station. Sgt. Dore's cruiser was one of three immediately on the scene, and Sgt. Dore was the first to approach the vehicle.

{¶14} He walked up to the front passenger seat and escorted the passenger out of the vehicle. Sgt. Dore was focused on this individual because he believed him to be the robbery suspect described over the radio. Sgt. Dore observed the individual

---

[2] This apparent discrepancy is addressed infra.

reaching into his waistband, so Sgt. Dore grabbed his wrist and pinned him to his cruiser. Sgt. Dore then removed a loaded 9-millimeter handgun from the individual's left waistband.

{¶15} Another loaded weapon was found in the rear seat of the car, tucked underneath the driver's seat, in front of the rear passenger seat from which another black male had been removed.

{¶16} Sgt. Dore continued to pat down his suspect, and in addition to the loaded handgun, found marijuana, powder cocaine, and a rock of cocaine.

{¶17} At some point, Sgt. Dore stated to the individual, "You are wanted for robbery." At the suppression hearing, Sgt. Dore did not remember that the man had any response; he recalled that the individual made no statements to him. The man did not resist the arrest.

{¶18} At some point, the individual Sgt. Dore removed from the car was identified as Marcus A. Pickens. The rear male passenger was identified as appellant Tywhon Butler.

{¶19} Steven Simpkins was not in the vehicle.

*The Aftermath of the Traffic Stop*

{¶20} A car from the surveillance team pulled up at the scene of the traffic stop. When they learned Simpkins was not in the car, they left immediately.

{¶21} When Doty learned Simpkins was not in the suspect vehicle, he and other officers on the surveillance team drove back to Marion and made contact with the Marion Police Department and Marion County Sheriff's Department. Marion detectives knocked on Chiquita Brown's door and were given permission to enter.

Steven Simpkins was eventually found hiding in the basement of the residence and was arrested on the robbery warrant.

{¶22} Pickens was charged by indictment with one count of trafficking in cocaine pursuant to R.C. 2925.03(A)(2) with a forfeiture specification and a firearm specification, one count of possession of cocaine pursuant to R.C. 2925.11(A) with a firearm specification, one count of carrying a concealed weapon pursuant to R.C. 2923.12(A)(2), and one count of having weapons under disability pursuant to R.C. 2923.13(A)(3).

{¶23} Appellant, the rear male passenger of the car, was charged by indictment with one count of carrying a concealed weapon pursuant to R.C. 2923.12(A)(2), and two counts of having weapons under disability pursuant to R.C. 2923.13(A)(2) and 2923.13(A)(3).

{¶24} Pickens and appellant both moved to suppress the evidence resulting from the traffic stop on the basis that the officers did not have a reasonable belief Pickens was Simpkins and therefore had no basis to stop the vehicle.

*The Discrepancies*

{¶25} The suppression hearing explored the reasonableness, or unreasonableness, of Doty's belief that the man later identified as Pickens was Steve Simpkins. Simpkins is a physically slight black male with a light complexion. Pickens, on the other hand, is six foot two, weighs 250 pounds, and has a dark complexion.

{¶26} The state presented the testimony of Doty and Dore. The state's physical evidence at the hearing consisted of the nine surveillance photographs of a maroon Malibu and a man walking wearing a black hat, white t-shirt, and black pants.

Doty testified he showed these photographs to Cox and Cox identified the man as Simpkins.

{¶27} The relevant physical evidence of Pickens and appellant included a small booking photograph of Steven Simpkins, the booking photograph of Pickens, and two of the state's photographs of Simpkins "blown up" to show the man's hat includes a white emblem on the front.  Pickens also presented the clothing he wore the day of the traffic stop and resulting arrest: an all-black baseball-style cap, black sweatpants, and a white "hoodie"-style sweatshirt with a black design on the front.

{¶28} Pickens also presented his version of events leading up to the traffic stop through the testimony of his girlfriend Melissa Lucas.  Lucas was the driver of the Hyundai and has two children with Pickens.  She stated that on the day of the stop, she and Pickens intended to travel to Columbus to buy a car.  The Hyundai was a rental.

{¶29} First they went to 505 East Mark Street to drop off the two children at Pickens' grandmother's house.  The grandmother lives across the street from Chiquita Brown. Lucas stated that she stopped in front of the house and Pickens got out, taking the children inside.  She briefly got out of the car to take the car seats out of the back seat and then got back in behind the wheel.  Pickens came out of his grandmother's house and answered a call on his phone; as he talked, he walked across the street to the driveway of Chiquita Brown's house and stood there briefly, talking to someone seated inside a maroon Malibu.  Pickens then came back across the street, got into the Hyundai, and they drove away.

{¶30} Lucas and Pickens stopped twice to pick up passengers, appellant and his friend Amanda.  Lucas explained appellant and Amanda came along because they needed an extra licensed driver to pick up the car and return the rental car.  Pickens had $8200 in cash with him, which Lucas claimed was her tax return money and wages to buy the car.

{¶31} Lucas stated that on the day of the stop, Pickens wore a black hat, black sweatpants, and a white hooded sweatshirt with black graphics.

{¶32} We note from the record another discrepancy that was not explored at the suppression hearing.  Chiquita Brown, Simpkins' girlfriend, was known to drive a maroon Malibu.  Doty initially saw Simpkins get out of a maroon Malibu, and Lucas described a maroon Malibu in Brown's driveway.  Lucas, however, drove a black Hyundai.  Doty saw "Simpkins," actually Pickens, get into a black Hyundai.  It is the black Hyundai that was eventually stopped.  The discrepancy, however, is that Sgt. Dore described the target of the radio dispatch as a maroon car, and describes the car he actually stopped and removed appellant from as maroon.

{¶33} Testimony at the suppression hearing focused almost exclusively on the physical differences between Simpkins and Pickens, down to their tattoos and the jewelry they may have been wearing.  No one questioned the issue with the vehicle descriptions.  The trial court's findings of fact indicate Doty saw "Simpkins" get into a black Hyundai, which was later stopped in response to his dispatch.  Because this finding is supported elsewhere in the record by Doty and Lucas, we can only conclude Sgt. Dore misspoke, therefore, as to the color of the vehicle involved in the traffic stop.

*Suppression Motions Overruled*

{¶34} The trial court overruled the motions to suppress on February 25, 2011.

{¶35} On August 9, 2011, Pickens entered pleas of no contest to trafficking in cocaine with firearm and forfeiture specifications and carrying a concealed weapon. Appellee dismissed the remaining counts. Appellant entered a plea of no contest to one count of having weapons while under disability and the remaining counts were dismissed.

{¶36} Appellant appeals from the trial court's judgment entry overruling his motion to suppress.

{¶37} Appellant raises one Assignment of Error:

{¶38} "I.   THE TRIAL COURT VIOLATED APPELLANT'S RIGHTS UNDER THE FOURTH AMENDMENT TO THE U.S. CONSTITUTION AND THE OHIO CONSTITUTION, ARTICLE I, SECTION 14, BY FAILING TO SUPPRESS EVIDENCE OBTAINED FOLLOWING AN UNLAWFUL STOP THAT WAS BASED ON AN UNREASONABLE MISTAKE OF IDENTITY."

I.

{¶39} Appellate review of a trial court's decision to deny a motion to suppress involves a mixed question of law and fact. *State v. Long*, 127 Ohio App.3d 328, 332, 713 N.E.2d 1 (4th Dist. 1998). During a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to resolve questions of fact and to evaluate witness credibility. *State v. Brooks*, 75 Ohio St.3d 148, 154, 661 N.E.2d 1030 (1996). A reviewing court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Medcalf*, 111 Ohio

App.3d 142, 145, 675 N.E.2d 1268 (4th Dist.1996). Accepting these facts as true, the appellate court must independently determine as a matter of law, without deference to the trial court's conclusion, whether the trial court's decision meets the applicable legal standard. *State v. Williams*, 86 Ohio App.3d 37, 42, 619 N.E.2d 1141 (4th Dist.1993), overruled on other grounds.

{¶40} There are three methods of challenging a trial court's ruling on a motion to suppress on appeal. First, an appellant may challenge the trial court's finding of fact. In reviewing a challenge of this nature, an appellate court must determine whether the trial court's findings of fact are against the manifest weight of the evidence. See, *State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982); *State v. Klein*, 73 Ohio App.3d 486, 597 N.E.2d 1141 (1991). Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. See*, Williams*, supra. Finally, an appellant may argue the trial court has incorrectly decided the ultimate or final issues raised in a motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry*, 95 Ohio App.3d 93, 96,620 N.E.2d 906 (8th Dist.1994).

{¶41} Appellant argues the trial court incorrectly determined the ultimate issue raised in the motion to suppress, to wit, that Doty reasonably believed Pickens was Simpkins. We disagree. While we agree Doty's mistake of fact was reasonable, we

find the ultimate issue is whether Sgt. Dore was entitled to rely upon the radio dispatch despite the misidentification.

{¶42} The extensive, often confusing testimony at the suppression hearing focused almost entirely on Doty's surveillance of Simpkins and whether he could reasonably mistake Pickens for Simpkins when the two men are physically dissimilar. We find, however, that the inquiry is properly focused instead on the actions of Sgt. Dore, the sheriff's deputy who actually made the stop and arrest. Doty was not on the scene when the stop was made (T. 23, 56). The sole reason the car containing appellant was stopped was because Doty radioed to the Delaware County Sheriff's Department that Simpkins was in the car and had a warrant for robbery (T. 47, 55).

{¶43} The Fourth Amendment to the United States Constitution prohibits warrantless searches and seizures, rendering them *per se* unreasonable unless an exception applies. *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 10 L.Ed.2d 576 (1967). A police stop of a motor vehicle is a significant intrusion requiring justification as a "seizure" within the meaning of the Fourth Amendment. *Delaware v. Prouse*, 440 U.S. 648, 653, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979).

{¶44} A police officer may stop an automobile for investigation where the officer has an articulable and reasonable suspicion that the motorist is unlicensed or that an automobile is not registered, or that either the vehicle or an occupant is otherwise subject to seizure for violation of law. *State v. Chatton*, 11 Ohio St.3d 59, 61, 463 N.E.2d 1237 (1984), cert. denied, 469 U.S. 856, 105 S.Ct. 182, 83 L.Ed.2d 116 (1984), citing *Delaware v. Prouse*, supra. The investigative stop exception to the Fourth Amendment warrant requirement permits a police officer to stop an individual

provided the officer has the requisite reasonable suspicion based upon specific, articulable facts that a crime has occurred or is imminent. *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). In evaluating the propriety of an investigative stop, a reviewing court must examine the totality of the circumstances that provided the foundation for the officer's suspicion to warrant an inquiry. *State v. Bobo*, 37 Ohio St.3d 177, 178, 524 N.E.2d 489 (1988).

{¶45} Doty mistakenly believed the individual he saw get into the Hyundai was Steve Simpkins, the target of the investigation. The trial court found Doty's conclusion to be reasonable. We are bound to accept the trial court's findings of fact if they are supported by competent, credible evidence, and such is the case. It is evident Doty lost sight of the target of his surveillance several times, which led to him mistaking the individual getting into the Hyundai for Simpkins. Based upon our review of the record, there is no evidence that Doty's mistaken identification of Pickens as Simpkins upon his entering the Hyundai is anything other than a mistake of fact.

{¶46} The United States Supreme Court has held that a police officer's mistake of fact will not lead to the suppression of evidence where the mistake was "understandable" and a reasonable response to the situation facing the police officer. *Hill v. California*, 401 U.S. 797, 804, 91 S.Ct.1106, 28 L.Ed.2d 484 (1971). Here, the trial court's finding that Doty's misidentification was reasonable is supported by competent, credible evidence in the record: while Simpkins and Pickens are physically dissimilar based solely upon their physical descriptions, Doty's mistake is easier to understand when the photos of Simpkins in State's Exhibits 6, 7, 8, and 9 are compared with the photo of Pickens, wearing what appears to be a white t-shirt, in his

booking photo (Defendant's Exhibit D). Doty's distance from the individual, combined with his efforts not to be detected, leads us to the conclusion his mistake was reasonable.

{¶47} We are mindful of the U.S. Supreme Court's recognition that "[i]n order to satisfy the reasonableness requirement of the Fourth Amendment, what is generally demanded of the many factual determinations that must regularly be made by agents of the government * * * is not that they always be correct, but that they always be reasonable." *Illinois v. Rodriguez*, 497 U.S. 177, 185-186, 110 S.Ct. 2793, 111 L.Ed.2d 148. Further, "sufficient probability, not certainty, is the touchstone of reasonableness under the Fourth Amendment." *Hill v. California*, supra, 401 U.S. at 804; see also, *Brown v. King*, 5th Dist. No. 2008-CA-00165, 2009-Ohio-4957.

{¶48} Doty's reasonable mistake of fact led to the radio dispatch heard by Sgt. Dore: a suspect with a warrant was in a black Hyundai southbound on Route 23. The fact of the mistaken identification does not render the ensuing stop invalid.

{¶49} Sgt. Dore performed the stop independent of Doty on the basis of information received in a radio dispatch. "Information received on a police broadcast is in the nature of an official communication, and ordinarily it must be considered as a trustworthy source of information. A police officer necessarily relies on the information he receives over the police radio, and upon the receipt of such information it is the duty of the officer to act quickly." *State v. Fultz*, 13 Ohio St.2d 79, 81, 234 N.E.2d 593 (1968), cert. denied, 393 U.S. 854, 89 S.Ct. 95, 21 L.Ed.2d 123 (1968). See also, *State v. Woodfork*, 4th Dist. No. 04CA2798, 2005-Ohio-2469, appeal not allowed, 106 Ohio St.3d 1545, 2005-Ohio-5343, 835 N.E.2d 727; *State v. Fields*, 4th Dist. No.

96CA1742, 1996 WL 695582 (Dec. 2, 1996); *State v. Kuno*, 46 Ohio St.2d 203, 346 N.E.2d 768 (1976); *State v. Chapa*, supra.

{¶50} In short, Sgt. Dore needed only a reasonable, articulable suspicion of criminal activity to stop the suspect vehicle, which was supplied by the dispatch that an individual in the car had a warrant for his arrest. Ultimately the mistake of identity is not controlling.

{¶51} There is no evidence, and no party has alleged, that any of the law enforcement officers involved did not act in good faith. See, *State v. Campbell*, 8th Dist. No. 83787, 2004-Ohio-6858. Appellant makes no claim, nor is there any evidence, that the actions of any police officer or sheriff's deputy involved in this case were part of a deceptive course of conduct or "merely pretense." *See, State v. Chapa*, 10th Dist. No. 04AP-66, 2004-Ohio-5070, ¶ 16.

{¶52} In *Village of Granville v. Young*, a police officer observed a car go left of center and requested a check of the car's license status. 5th Dist. No. 97-CA-110, 1998 WL 516307 (Apr. 29, 1998). The dispatcher told the officer the driver's license was suspended. On that basis, the officer stopped the car. Upon speaking with the driver, the officer detected an odor of an alcoholic beverage, and some drug-related items were discovered. As the O.M.V.I. investigation progressed, the officer learned the driver's license was not suspended; the radio dispatch regarding the license status was incorrect. The driver moved to suppress, arguing the stop was unlawful because the driver's license status information was wrong. The trial court denied the motion and we agreed, finding the mistake over the license status was irrelevant. The dispatch regarding the suspended license gave the officer sufficient facts, as known to

him then, to form a reasonable, articulable suspicion to stop the vehicle for the purpose of checking the driver's license. *Id.*, citing *State v. Chatton*, 11 Ohio St.3d 59, 61, 463 N.E.2d 1237 (1984), cert. denied, 469 U.S. 856, 105 S.Ct.182, 83 L.Ed.2d 116.

{¶53} In *State v. Mathis*, police were in search of a suspect who fled the scene of a domestic violence incident. 9th Dist. No. CIV.A.22039, CIV.A.22040, 2004-Ohio-6749. Officers noticed a man, West, in the area wearing clothes matching the description of the suspect, and approached. The man fled and eventually entered Mathis' house, with police in pursuit. Inside Mathis' house was a quantity of marijuana. The state appealed the trial court's granting of Mathis' motion to suppress, arguing that police had reasonable suspicion to stop and question West because West's clothing fit the description of the domestic violence suspect. The appellate court agreed, despite the fact that West is African-American and the domestic violence suspect was white: the officers were searching for a man in the general area surrounding the victim's residence who had, from what they had been told, threatened to kill the victim. At the time of the stop, the officers knew only that West met the description they had been given of the suspect. Their mistake as to his race did not affect the validity of the stop, since they were unaware of race at the time. *Id.*, 2004-Ohio-6749 at ¶ 15 (citation omitted).

{¶54} Similarly in the instant case, Sgt. Dore was only aware that a black male named Steven Simpkins was the right-front passenger in a car traveling south on Route 23, and had a warrant for his arrest. Details of complexion and clothing were unknown. Further, the misidentification was not discovered until after Sgt. Dore

escorted Pickens to the cruiser, Pickens reached into his waistband, and Dore discovered the firearm. (T. 95). Thus there was no intervening event which would have alerted Dore that the reason for the initial stop was invalid. See, *State v. Chapa*, supra, 2004-Ohio-5070 at ¶ 15.

{¶55} We find Sgt. Dore's stop of the vehicle, and the resulting evidence discovered and arrests made, are not rendered invalid by Doty's misidentification of Pickens as Steven Simpkins.

{¶56} For the foregoing reasons, appellant's sole assignment of error is overruled, and the judgment of the Delaware County Court of Common Pleas is affirmed.

By: Delaney, P.J.

Edwards, J. concurs.

Hoffman, J. concurs separately.

HON. PATRICIA A. DELANEY

HON. WILLIAM B. HOFFMAN

HON. JULIE A. EDWARDS

PAD:kgb

*Hoffman, J., concurring*

{¶57} I concur in the majority's disposition of Appellant's sole assignment of error. However, unlike the majority, I find the reasonableness of the mistaken identity is controlling.


_____

HON. WILLIAM B. HOFFMAN

[Cite as *State v. Butler*, 2012-Ohio-2902.]

IN THE COURT OF APPEALS FOR DELAWARE COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| | : | |
| Plaintiff-Appellee | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| TYWHON L. BUTLER | : | |
| | : | |
| | : | Case No. 11CAA100092 |
| Defendant-Appellant | : | |

 

For the reasons stated in our accompanying Opinion on file, the judgment of the Delaware County Court of Common Pleas is affirmed. Costs assessed to Appellant.

 

_____
HON. PATRICIA A. DELANEY

 

_____
HON. WILLIAM B. HOFFMAN

 

_____
HON. JULIE A. EDWARDS