[Cite as *State v. Thornton*, 2014-Ohio-4011.]

STATE OF OHIO, COLUMBIANA COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | ) | |
| | ) | CASE NO.   14 CO 19 |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | |
| VS. | ) | O P I N I O N |
| | ) | |
| GRAYLEN THORNTON, | ) | |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |


CHARACTER OF PROCEEDINGS:          Criminal Appeal from East Liverpool
                                                                    Municipal Court, Case No. 13CRB1863.


JUDGMENT:                                           Affirmed.


APPEARANCES:
For Plaintiff-Appellee:                          Attorney Robert Herron
                                                               Prosecuting Attorney
                                                               Attorney Timothy McNicol
                                                               Assistant Prosecuting Attorney
                                                               105 South Market Street
                                                               Lisbon, Ohio  44432


For Defendant-Appellant:                     Attorney Charles Amato
                                                               Attorney Lynsey Lyle-Opalenik
                                                               991 Main Street
                                                               Wellsville, Ohio  43968


JUDGES:
Hon. Joseph J. Vukovich
Hon. Gene Donofrio
Hon. Mary DeGenaro

                                                               Dated:  September 9, 2014

VUKOVICH, J.

**{¶1}** Defendant-appellant Graylen Thornton appeals the decision of the East Liverpool Municipal Court denying his suppression motion. Appellant contends that the officer needed reasonable suspicion in order to ask for his name. He also states that the officer's mistaken belief as to the name he provided was not reasonable. Appellant lastly contends that there was no probable cause to arrest him for improper handling of a firearm in a motor vehicle because he complied with his duty to promptly inform the officer that he had a concealed carry permit. For the following reasons, the judgment of the trial court is affirmed.

## STATEMENT OF THE CASE

**{¶2}** On August 24, 2013, appellant was arrested for improper handling of a firearm in a motor vehicle, a first degree misdemeanor in violation of R.C. 2923.16(E)(1). This subdivision states that no person who has been issued a concealed handgun license, who is the driver or an occupant of a motor vehicle that is stopped as a result of a traffic stop or a stop for another law enforcement purpose and who is transporting or has a loaded handgun in the motor vehicle in any manner, shall fail to promptly inform any law enforcement officer who approaches the vehicle while stopped that the person has been issued a concealed handgun license and that the person then possesses or has a loaded handgun in the motor vehicle.

**{¶3}** Appellant filed a motion to suppress arguing that the stop of the vehicle was not valid. Regardless, he stated that he should not have been arrested as he had a concealed carry permit and he notified the officer of such. At the suppression hearing, Officer 1 testified that he was responding to a call in a "high drug" area around 2:00 a.m. when he saw appellant and another person walking on the sidewalk. (Tr. 8). They were right in front of a known drug house on McKinnon Avenue, and it appeared to the officer that they were heading toward it. (Tr. 9-10). The officer stopped his vehicle and asked out of his passenger window for their names. (Tr. 11).

**{¶4}** Appellant's companion provided his name, and the officer recognized him. (Tr. 28). The officer, whose K-9 dog was barking in the back seat, believed appellant Graylen Thornton introduced himself as "Tyson Gordon." (Tr. 10). Appellant

is said to have offered his identification, but the officer was in a hurry and continued on to his call. (Tr. 32). The officer recognized the name Tyson Gordon from the police station as someone involved in drugs. (Tr. 12, 25).

{¶5} An hour later, the officer drove past the known drug house with Officer 2 in his vehicle. They saw appellant come out of the house. (Tr. 13, 50). Officer 1 inquired with dispatch whether Tyson Gordon had any warrants, and dispatch responded that there was a warrant for him out of the municipal court. (Tr. 13). By that time, appellant had entered the back seat of a vehicle; the companion from earlier was driving, and another passenger was in the front. As the vehicle pulled away, the K-9 unit initiated a traffic stop. Two other police vehicles stopped as well.

{¶6} Officer 1 approached the driver's side and began speaking to the driver. Officer 2 approached from the back passenger side with his flashlight and noticed appellant in an arched position in the back seat trying to "shove" a gun down his pants. (Tr. 45, 58). Officer 2 yelled that there was a gun and drew his weapon. Appellant looked at him and pulled his shirt over the gun. Officer 2 stated that appellant was not saying anything while in the car. (Tr. 45)

{¶7} The occupants were ordered out with their hands up and told to get on the ground. Officer 1 testified that appellant did not immediately comply and seemed to be "messing" with the gun in his waistband even though they were ordering him to keep his hands off the gun. (Tr. 16). He stated that appellant did not voice that he had a weapon or a permit. (Tr. 38, 40).

{¶8} Officer 2 confirmed that it took several orders before appellant complied with his instructions. Appellant did not promptly alight from the vehicle, he alighted with both hands still in his waistband instead of up in the air, and it then took several commands before appellant got to the ground. (Tr. 46, 59-60). Officer 2 stated that appellant may have been "uttering something" at some point after he exited the car. (Tr. 60).

{¶9} A captain covering the front of the stopped vehicle also testified that appellant did not immediately put his hands up and instead had his hands around the front of his waist area, confirming that it took several commands before he put his

hands up and got on the ground. (Tr. 71-72). The captain did not hear appellant saying anything. (Tr. 72). As appellant was lying down, a loaded Glock fell from his waistband. He was then cuffed, and his concealed carry permit was found in his wallet as they were ascertaining identities. (Tr. 38, 46, 61).

{¶10} After the suppression hearing, the court asked for post-hearing briefs. The state's opposition to suppression urged that the officer's mistaken belief that appellant was the person with the warrant was objectively reasonable, noting the similar sounding names. The state also urged that the later stop to investigate the matter was done in good faith.

{¶11} The defendant's post-hearing brief stated that the initial stop to ask his name lacked reasonable suspicion and thus the second stop was invalid. As to the reasonableness of the officer's mistake, the defense suggested that the officer should have used the cruiser's computer to view a photograph of Tyson Gordon to ensure appellant was the person with the warrant. It was also said that appellant tried to give the officer his identification at the initial encounter, but the officer did not view it even though his barking dog made it hard to hear. Lastly, the defense mentioned that once the officers discovered his name and his permit, he should have been released.

{¶12} On February 13, 2014, the trial court overruled the suppression motion. The court explained that the initial encounter did not rise to the level of a *Terry* stop but was a mere consensual police-citizen exchange. The court noted that the officer did not exit the car or show force, merely asked names, and then drove away, concluding that there was no show of authority that could be seen as a command to stop. The trial court also ruled that the second encounter was not an illegal stop, adopting the state's rationale that the officer's mistake was reasonable and citing the *Kinzy* and *Fain* cases reviewed below.

{¶13} On March 11, 2014, appellant pled no contest to the offense. He was given a suspended sentence of ninety days with two years of non-reporting probation and fined $200. He was ordered to surrender his concealed carry permit, and the firearm was forfeited by stipulation. Appellant filed a timely notice of appeal.

<u>ASSIGNMENT OF ERROR NUMBER ONE</u>

{¶14} Appellant sets forth two assignments of error, the first of which alleges:

{¶15} "The trial court erred in denying Defendant's Motion to Suppress as the Officer had no reasonable, articulable suspicion to stop Defendant and such stop violated Defendant's Fourth and Fourteenth Amendment rights subsequently leading to Defendant being found guilty of Improperly Handling a Firearm in a Motor Vehicle, a violation of O.R.C. 2923.16(E)(1)."

{¶16} First, appellant contends that it was improper for the officer to ask his name merely because he was walking down the sidewalk in a high drug area in front of a known drug house at 2:00 a.m. He asserts that an objective manifestation that he was or was about to be engaged in criminal activity was required to stop him, i.e. he alleges that reasonable suspicion was required to ask for a name. Appellant then notes that the officer must not have reasonably believed he was about to engage in criminal activity or he would have alighted from his cruiser, asked for formal identification, and run the warrant check at that time. The state responds that the initial momentary question posed to appellant was a mere consensual encounter and did not rise to the level of an investigatory stop.

{¶17} Appellate review of a suppression decision presents a mixed question of law and fact. *State v. Roberts*, 110 Ohio St .3d 71, 2006-Ohio-3665, 850 N.E.2d 1168, ¶ 100. Legal conclusions are reviewed de novo. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. However, factual decisions are afforded great deference. *State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982). This is because the trial court is the fact-finder who occupies the best position from which to resolve factual questions and evaluate the credibility of witnesses. *State v. Mills*, 62 Ohio St.3d 357, 366, 582 N.E.2d 972 (1992).

{¶18} An investigatory stop is not an arrest and does not require probable cause. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Rather, it must be supported by reasonable suspicion that criminal activity is imminent. *Id.* In making an investigatory stop, the officer must point to specific and articulable objective facts that, along with any reasonable inferences that can be drawn therefrom, reasonably warrant the intrusion of a *Terry* stop. *Id.* The propriety of an investigative

stop must be viewed in light of the totality of the circumstances. *State v. Bobo*, 37 Ohio St.3d 177, 179, 524 N.E.2d 489 (1988) (presence in a high crime area, time of night, furtive movements are circumstances); *State v. Carter*, 69 Ohio St.3d 57, 65, 630 N.E.2d 355 (1994) (high crime area not enough).

{¶19} However, a consensual police-citizen encounter does not rise to the level of an investigatory stop and does not require reasonable suspicion of imminent criminal activity. *State v. Starcher*, 7th Dist. No. 13JE1, 2013-Ohio-5533, ¶ 22-23 (and when an officer is engaging in a community caretaking function, he does not need a reasonable suspicion of criminal activity prior to approaching a person or a vehicle as the encounter is considered consensual rather than investigatory). Encounters are consensual where the police merely approach a person in a public place, engage the person in conversation, request information, and the person is free to decline to answer and walk away. *United States v. Mendenhall*, 446 U.S. 544, 553, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980).

{¶20} The request to see someone's identification does not make an encounter non-consensual. *Id.* at 555-556; *Florida v. Rodriguez*, 469 U.S. 1, 4-6, 105 S.Ct. 308, 83 L.Ed.2d 165 (1984). *See also Florida v. Bostick*, 501 U.S. 429, 435, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991) (request to search belongings does not make encounter non-consensual if message of required compliance is not conveyed). This is true unless the police officer has by physical force or show of authority restrained the person's liberty so that a reasonable person would not feel free to decline the officer's requests or otherwise disengage from the encounter. *Mendenhall*, 446 U.S. at 554.

{¶21} The slide from a consensual encounter into an investigatory stop is evaluated under the totality of the circumstances, and the factors that could indicate a seizure include a threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person, the use of language or tone of voice indicating that compliance with the officer's request might be compelled, approaching the citizen in a nonpublic place, and blocking the citizen's path. *Id.* Finally, if reasonable suspicion arises during or after the consensual encounter, a proper

investigatory stop can proceed. *See Starcher*, 7th Dist. No. 13JE1 at ¶ 24, citing *State v. Rappley*, 2d Dist. No. 11-CR-2693, 2013-Ohio-964, ¶ 20-31.

**{¶22}** Here, the officer was driving down the street in a high drug area at 2:00 a.m. and saw two people walking down the sidewalk in front of a known drug house as if they were approaching that house. The state does not contest the proposition that at this initial encounter there was no reasonable suspicion to stop the two people to investigate criminal activity.

**{¶23}** The officer stopped his vehicle in his own lane of travel and asked the two people their names. He did not use his siren or activate his lights. He did not even exit his vehicle. Rather, he spoke to them by remaining in the driver's seat and speaking through the open passenger window of his cruiser. The officer asked their names, and they provided their names. Appellant even notes that he offered his identification. The officer then drove away without checking identifications. .

**{¶24}** None of the *Mendenhall* factors are present here. This was a public street. There was only one officer. The officer did not display a weapon. There was no physical force or physical touching of the person. There is no indication that any language or tone of voice indicated compliance was compelled. The officer did not block the citizen's path. There was no show of authority over the preexisting fact that the person asking was a police officer. Moreover, the encounter was extremely brief and resulted in nothing but the provision of names.

**{¶25}** Under the totality of the circumstances, we conclude that the initial encounter did not rise to the level of a *Terry* stop. The trial court properly ruled that the initial momentary encounter was a consensual exchange which did not require reasonable suspicion.

**{¶26}** The next issue raised under this assignment of error is whether the officer's mistake of fact regarding appellant's name was reasonable. Appellant urges that the officer should have accepted the offer to show identification or the officer should have looked up the name he thought he heard on his computer to view a photograph. The state responds that the mistake was objectively reasonable and that any lack of good faith was a question for the trial court.

**{¶27}** When police have probable cause to arrest X and the officer reasonably mistakes the person they are arresting for X, the arrest is valid. *Hill v. California*, 401 U.S. 797, 802-803, 91 S.Ct. 1106, 28 L.Ed.2d 484 (1971). The same premise applies in conducting an investigatory stop based upon a factual mistake. *State v. Kinzy*, 7th Dist. No. 09MO7, 2010-Ohio-6499 at ¶ 23-25 (officer believed defendant pulled into a business lot when he pulled behind him to check on business, but defendant had actually pulled into his own driveway right next to business); *State v. Pickens*, 5th Dist. No. 11CAA090085, 2012-Ohio-2901, ¶ 44-48 (officer misidentified person he saw enter a car); *State v. Chapa*, 10th Dist. No. 04AP-66, 2004-Ohio-5070, ¶ 17 (officer mistakenly believed stop sign was on public street); *State v. Keilback*, 12th Dist. No. CA2001-01-002 (Oct. 22, 2001) (a stop of a vehicle that was the result of a mistake in reporting the vehicle's license number was a justified stop, reversing trial court's decision to suppress).

**{¶28}** Thus, a police officer's mistake of fact will not lead to the suppression of evidence where the mistake was "understandable" and a "reasonable response to the situation facing the police officer." *Kinzy*, 7th Dist. No. 09MO7 at ¶ 23, citing *Hill*, 401 U.S. at 804 and *State v. Fain*, 9th Dist. No. 18306 (Jan. 21, 1998) (officer mistakenly believed driver was Dwayne Fain, whose license was suspended, rather than the true driver whose last name was also Fain).

**{¶29}** Here, the officer believed appellant Graylen Thornton provided him with the name "Tyson Gordon" during a momentary consensual encounter on the sidewalk in front of a known drug house. His dog was barking, which made it difficult to hear. But, he correctly heard the other person's name (and he also recognized him), and he thought he heard appellant give a name that he recognized from the police station (as a person involved with drugs). The officer proceeded to respond to an emergency call.

**{¶30}** An hour later, at 3:00 a.m., the officer again saw appellant, this time exiting the known drug house. He asked dispatch to run a check on Tyson Gordon, and he was advised that there was an outstanding warrant for him out of the municipal court. By this point, appellant was in the back seat of a vehicle that was driving away. The officer thus initiated a stop of the vehicle.

**{¶31}** The failure to obtain and view appellant's license an hour before or run a warrant check earlier did not make the mistake in hearing appellant's name unreasonable. The officer was not proceeding with any investigation at that point. It was not until an hour later, when he saw appellant again (this time coming out of the known drug house), that he decided to check for a warrant.

**{¶32}** Nor did the mistake in hearing appellant's response (and proceeding under that mistake) become unreasonable because the officer did not later personally run his own check to find a photograph before stopping the vehicle. And, whether the viewing of a booking photograph of Tyson Gordon would have allowed the officer to realize that the person he saw on a sidewalk at 2:00 a.m. was not Tyson Gordon is questionable.

**{¶33}** The officer thought appellant identified himself by a certain name, the officer recognized the name, and dispatch advised there was a warrant. There was no absolute requirement that the officer ascertain what Tyson Gordon looked like before conducting an investigatory stop of a vehicle that was driving away when he believed it contained a person wanted on a warrant. Stopping to investigate was one "reasonable response to the situation facing the police officer" and was understandable. *Kinzy*, 7th Dist. No. 09MO7 at ¶ 23

**{¶34}** In conclusion, the credibility of the officer's testimony on his good faith mistake is a matter best left to the trial court. See *Pickens*, 5th Dist. No. 11CAA090085 at ¶ 51. The trial court could rationally conclude that the officer's mistake was understandable or objectively reasonable under all of the facts of the case. *See Hill v.*, 401 U.S. at 802-803 (if probable cause to arrest one person and officer reasonably mistakes the person they are arresting for one they intended to arrest, the arrest is valid). This assignment of error is overruled.

<u>ASSIGNMENT OF ERROR NUMBER TWO</u>

**{¶35}** Appellant's second assignment of error alleges:

**{¶36}** "The trial court erred in denying Defendant's Motion to Suppress as the Officer had no probable cause to arrest the Defendant and subsequently charge him

under O.R.C. 2923.16(E)(1) as Defendant had fully complied with his duties in carrying a concealed weapon."

{¶37} Although no testimony was provided that he complied with his permit holder duties, appellant argues here that he stated multiple times that he had a concealed handgun license. He points out that when Officer 2 approached the vehicle from the back and saw the gun, that officer yelled that there was a gun, which caused a commotion. Appellant suggests that they could thus not hear him informing them that he had a gun and a license as he was required to do by law. He notes that Officer 2 testified that appellant was "uttering something" but the officer could not hear what he was uttering. (Tr. 60-61). However, the defense did not elicit whether the utterings occurred while appellant was standing and refusing to comply with orders or while he was on the ground. In any event, there was no evidence of utterances while he was in the vehicle trying to shove a gun down his pants.

{¶38} As the state responds, appellant's compliance with his duties was not established at the suppression hearing. Appellant was charged with failing to promptly inform officers who approached the stopped vehicle that he has a concealed handgun license and he has a loaded handgun in the vehicle. R.C. 2923.16(E)(1). Officer 1 testified that he was speaking with the driver when the other officer yelled about a gun and that appellant kept "messing with" the gun in his waistband while the other officer ordered his hands off the weapon during which time appellant did not inform them that he had a weapon or a permit. (Tr. 16, 38). Officer 2 testified that he approached to see appellant trying to hide his gun down the front of his pants. When appellant noticed Officer 2, he did not say anything but pulled his shirt down and failed to immediately comply with orders to exit with his hands up and then lay down. In fact, according to Officer 2 and the captain, he exited with his hands on his waist. (Tr. 59-60, 72). No officer heard him announcing that he was carrying a loaded gun and that he had a concealed handgun license.[1]

---

[1] We note that other divisions of (E) provide that the person with the permit and loaded gun in the vehicle: must keep his hands in plain sight any time after the officer begins approaching the stopped vehicle; cannot have contact with the loaded gun by touching it with hands or fingers any time after the officer begins approaching the car; and cannot knowingly disregard or fail to comply with any

**{¶39}** Regardless, as the state points out, the parties stipulated that the only issue before the court was reasonable, articulable suspicion to stop. Dec. 10, 2013 J.E. The defense specifically agreed to this stipulation. (Tr. 6-7). The state also urges that this issue was not raised below. Appellant's suppression motion mentioned that he had a permit so he was permitted to carry the gun and claimed that appellant notified the officer as required. Yet, this did not present a suppression issue as no evidence was discovered after the arrest that resulted in any offense.

**{¶40}** That is, the gun was viewed as the officer approached the vehicle. Whether appellant complied with his duties as a concealed carry permit holder would not affect suppression here (as opposed to a case where, for instance, drugs are discovered on a person after they are arrested for carrying a concealed weapon). Rather, appellant's compliance would have been an issue for trial on the offense charged. Therefore, this assignment of error is overruled.

**{¶41}** For the foregoing reasons, the judgment of the trial court is hereby affirmed.


Donofrio, J., concurs.
DeGenaro, P.J., concurs.

---

lawful order given while the vehicle is stopped, including, but not limited to, a specific order to the person to keep his hands in plain sight. *See* R.C. 2923.16(E)(3)-(5). Although charged only with (E)(1) for failing to advise about the existence of a loaded gun and a permit, there was probable cause to arrest him violating one or more of these sections as well.