OPINION
{¶ 1} Katrina Chapa, defendant-appellant, appeals from a judgment of the Franklin County Municipal Court, in which the court found appellant guilty of operating a motor vehicle while intoxicated, a violation of R.C. 4511.19(A)(1) and first-degree misdemeanor.
 {¶ 2} In the early morning hours on March 23, 2002, Ohio State Trooper Lance Shearer was traveling on Powell Road when he observed appellant's vehicle stopped in the middle of Parkhurst Drive, an intersecting roadway. Trooper Shearer testified that he turned his cruiser around, pulled behind appellant's vehicle, and activated his flashers. He stated that, as he began to exit his vehicle, appellant's vehicle accelerated away from him. Approximately 100 yards away, appellant proceeded through a stop sign and failed to signal a left turn. Appellant eventually stopped her vehicle. After an investigation, Trooper Shearer believed appellant to be under the influence of alcohol.
 {¶ 3} The State of Ohio, plaintiff-appellee, charged appellant with, among other things, operating a motor vehicle while under the influence of alcohol ("OMVI"), pursuant to R.C.4511.19, and disobeying a stop sign on a public street, pursuant to R.C. 4511.43. The charges were filed in Delaware County Municipal Court. After filing these charges, Trooper Shearer discovered that Parkhurst Drive was a privately owned road.
 {¶ 4} According to the parties, on May 6, 2002, the Delaware Municipal Court dismissed the case, finding that the events took place in the city of Columbus. The case was refiled on June 6, 2002, in the Franklin County Municipal Court. In that case, appellant was charged with OMVI and reckless operation. On July 9, 2002, the court dismissed the case, finding that it lacked jurisdiction because the offenses occurred in Delaware County.
 {¶ 5} On August 22, 2002, the state refiled the present case in the Franklin County Municipal Court. On October 1, 2002, appellant filed a motion to dismiss, which was overruled on November 13, 2002. On May 1, 2003, appellant filed a motion to suppress evidence obtained after the arrest, arguing that the stop was illegal because she was charged for violating R.C.4511.43, which applies only to stop sign infractions that occur on public streets. The trial court denied the motion to suppress in an entry dated November 14, 2003. The court held that, even though appellant was initially charged with a violation of R.C.4511.43, the stop was reasonable because the trooper could have cited appellant with a violation of R.C. 4511.432, which permits owners of private roadways to erect stop signs that are enforceable by law enforcement officers. On November 19, 2003, appellant pled no contest to the OMVI charge. Apparently, the charge for reckless operation was dismissed, although we see no obvious notation of such in the record. The court ordered appellant to undergo three days in an alcohol treatment program, ordered her to pay $300 plus court costs, and suspended her license for 180 days, the enforcement of which were suspended pending appeal. Appellant appeals the judgment of the trial court, asserting the following two assignments of error:
I. The trial court erred in overruling the defendant-appellant's motion to suppress and finding that the seizure of Ms. Chapa did not violate the fourth amendment, United States Constitution or Article 1, Section 14 of the Ohio Constitution.
II. The trial court erred in overruling Defendant-Ap[p]ellant's motion to dismiss for improper venue after another branch of the court had already litigated the issue and the state failed to file a timely appeal.
 {¶ 6} Appellant argues in her first assignment of error that the trial court erred in overruling her motion to suppress. The standard of review with respect to a motion to suppress is limited to determining whether the trial court's findings are supported by competent, credible evidence. State v. Lattimore,
Franklin App. No. 03AP-467, 2003-Ohio-6829, at ¶ 5. In a hearing on a motion to suppress, the trial court assumes the role of trier of fact and, because the court is in the best position to resolve questions of fact and evaluate the credibility of witnesses, a reviewing court "must accept the trial court's factual findings and the trial court's assessment of witness credibility." Id. However, while "[a]ccepting those facts as true, an appellate court must independently determine, as a matter of law, without deference to the trial court's conclusion, whether the facts meet the applicable legal standard." Id.
 {¶ 7} The Fourth Amendment to the United States Constitution prohibits warrantless searches and seizures, rendering them, per se, unreasonable unless an exception applies. Katz v.United States (1967), 389 U.S. 347, 88 S.Ct. 507. A police stop of a motor vehicle is a significant intrusion requiring justification as a "seizure" within the meaning of the Fourth Amendment.Delaware v. Prouse (1979), 440 U.S. 648, 99 S.Ct. 1391. The investigative stop exception to the Fourth Amendment warrant requirement permits a police officer to stop an individual, provided the officer has the requisite reasonable suspicion based upon specific, articulable facts that a crime has occurred or is imminent. Terry v. Ohio (1968), 392 U.S. 1, 21, 88 S.Ct. 1868. In evaluating the propriety of an investigative stop, a reviewing court must examine the "totality of the circumstances" that provided the foundation for the officer's suspicion to warrant an inquiry. State v. Bobo (1988), 37 Ohio St.3d 177. In essence, therefore, a police officer conducting an investigative stop need not have probable cause to stop the vehicle in question. Statev. Zampini (1992), 79 Ohio App.3d 608, 610, citing State v.Brandenburg (1987), 41 Ohio App.3d 109.
 {¶ 8} We first note that Trooper Shearer initially noticed appellant's vehicle when she was stopped in the middle of a roadway. Police officers, without reasonable suspicion of criminal activity, are allowed to intrude on a person's privacy to carry out "community caretaking functions" to enhance public safety. State v. Norman (1999), 136 Ohio App.3d 46. Local police officers frequently investigate vehicle accidents in which there is no claim of criminal liability and engage in community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute. Cady v. Dombrowski (1973),413 U.S. 433, 93 S.Ct. 2523. It has been held that the mere approach of people seated within parked vehicles does not constitute a seizure so as to require reasonable suspicion supported by specific and articulable facts. State v. Welz (Dec. 9, 1994), Lake App. No. 93-L-137. Likewise, under appropriate circumstances, a law enforcement officer may be justified in approaching a vehicle to provide assistance without needing any reasonable basis to suspect criminal activity. Norman, supra. Here, Trooper Shearer testified he noticed appellant's vehicle stopped in the middle of the roadway with its headlights on and leaving no room for other vehicles to pass. There were no buildings or pedestrians near appellant that would have caused her to stop there. He testified he stopped to see if he could render assistance. A law enforcement officer in Trooper Shearer's position could reasonably have had concerns as to whether the car was disabled, the car had been involved in an accident, the driver was injured, or a host of other reasonable possibilities. A key community caretaking function is to help motorists who are stranded or in distress. Marysville v. Mushrush (June 18, 1999), Union App. No. 14-99-07. Accordingly, we find no constitutional infirmaries with the officer's initial actions in approaching appellant's already-stationary vehicle and activating his emergency beacons, and find such actions reasonable.
 {¶ 9} However, the crux of appellant's argument is that Trooper Shearer did not possess the requisite reasonable suspicion, based upon specific, articulable facts that a crime had occurred when appellant failed to stop at the stop sign and failed to activate her turn signal. Appellant contends that Trooper Shearer's belief that she had violated R.C. 4511.43 was wrong, as that section applies only to stop signs on public roadways. Appellant further asserts that Trooper Shearer's belief cannot be found reasonable under R.C. 4511.432, because that section permits law enforcement officers to enforce stop signs located on private property only when the property owner has posted a sign at the entrance of the private road that clearly informs persons entering the road that they are entering private property, stop signs have been posted and must be obeyed, and the signs are enforceable by law enforcement officers under state law, and there were no such signs posted in the present case. Appellant contends that Trooper Shearer's mistake negated any reasonable suspicion that a crime had occurred. We disagree.
 {¶ 10} We find the Ohio Supreme Court's discussion in Statev. Chatton (1984), 11 Ohio St.3d 59, to be instructive. InChatton, the defendant was stopped after a police officer observed him operating a vehicle that appeared to have no license plates. When the officer approached the vehicle on foot, he observed a valid temporary tag taped to the rear window; however, instead of letting the defendant go, the officer asked to see his driver's license. A subsequent radio check showed that the license was suspended. As a result, the defendant was placed under arrest for driving under suspension. A further search of the vehicle revealed a loaded gun under the driver's seat. The defendant was then indicted for carrying a concealed weapon.
 {¶ 11} The Ohio Supreme Court held that, once the suspicion that gave rise to the initial stop evaporated and was dispelled, any additional intrusion or detention had to have been supported by specific and articulable facts demonstrating the reasonableness of the continued detention. The court found that, because the police officer no longer maintained a reasonable suspicion that the defendant's vehicle was not properly licensed or registered after discovering the temporary tag, to further detain him and demand that he produce his driver's license was akin to the random detentions struck down by the United States Supreme Court in Prouse, supra. Id. at 63. Thus, pursuant toChatton, it is apparent that, as long as the officer is operating under a reasonable suspicion, the stop is valid. It is only from the point the suspicion is dispelled by the discovery of a mistake or additional information that the suspicion becomes insufficient. Importantly, the court in Chatton did not indicate that the original suspicion became invalid or unreasonable from its commencement.
 {¶ 12} Applying Chatton to the present case, Trooper Shearer had a reasonable suspicion that appellant had violated R.C. 4511.43 when he observed her fail to stop at the stop sign. At the time he pulled her over, he was under the belief that the roadway upon which the sign was located was public. Pursuant toChatton, Trooper Shearer's suspicion was reasonable until it was dispelled. As it was not until the next day that Trooper Shearer discovered his mistake, the officer's suspicion as of the time he executed the stop remained reasonable. Therefore, Trooper Shearer's stop of appellant's vehicle was not violative of theFourth Amendment.
 {¶ 13} Other courts have analyzed similar circumstances in accord with Chatton. For example, in Village of Granville v.Young (Apr. 29, 1998), Licking App. No. 97-CA-110, a police officer saw a vehicle weaving and traveling left of center and requested a validation check of the vehicle. The dispatcher reported to the officer that the owner of the vehicle's license was under suspension. After pulling over the vehicle and speaking to the driver, the officer detected an odor of alcohol and subsequently discovered several drug-related items on the driver and in the car. After the driver was charged with driving while intoxicated, as well as offenses relating to the drug-related items, it was discovered that the report concerning the driver's license suspension was incorrect. The driver moved to suppress the evidence obtained in the search, arguing that the stop was unlawful, as it was based on erroneous information that she had no driving privileges. The trial court denied the motion. On appeal, the court of appeals affirmed the trial court's denial of the motion to suppress. Citing Chatton, the appellate court found the fact that the information concerning the driver's license later proved to be incorrect was irrelevant. The report that appellant's license was suspended gave the officer sufficient facts, as known to him then, to form a reasonable, articulable suspicion to stop the vehicle for the purpose of checking appellant's driver's license.
 {¶ 14} In State v. Kaszas (Sept. 20, 1995), Medina App. No. 2413-M, an officer observed a vehicle pass by him and ran a check on the vehicle's license plate number. The check revealed that the plate was issued to a different make of vehicle and the owner's license was under suspension. The officer pulled over the vehicle and observed a gun in its retail box in the front seat. After he observed the gun, questioned the passenger, and returned to his patrol car to check the passenger's social security number, the officer observed that the license plate number on the vehicle was different than he originally believed. The passenger was subsequently arrested for having a weapon under disability. The trial court denied the passenger's motion to suppress the evidence. On appeal, the appellate court affirmed the trial court. The court of appeals found that the officer observed the gun before he knew that there was a discrepancy between the license plate numbers, and, accordingly, at the time he discovered the gun, he was still operating within the scope of a justified stop because no intervening event had yet alerted him that his reason for the initial stop was invalid. The appellate court noted that there was no testimony indicating that the officer's act in calling in the wrong license number was other than an isolated mistake. Thus, the court concluded that the officer stated a reasonable and articulable suspicion that traffic laws were being violated, and his initial stop of the vehicle was justified.
 {¶ 15} In State v. Keilback (Oct. 22, 2001), Clinton App. No. CA2001-01-002, a police officer observed a vehicle pass him. He noticed that the vehicle did not have a front license plate but had a temporary tag on the back of the vehicle. The officer ran the vehicle's temporary tag number, and the dispatcher advised the officer that the tag was expired and was registered to a different make of vehicle, and that a person wanted on aggravated burglary had been driving a vehicle belonging to the registered owner. The officer pulled over the vehicle and discovered that the driver's license was under suspension. The officer ran the temporary tag number a second time, and it came back valid. The officer did not know whether he had called the temporary tag number incorrectly the first time or whether the dispatcher incorrectly wrote it down. The driver was charged with driving while under suspension, and, subsequently, his motion to suppress was granted by the trial court. The court of appeals reversed. The appellate court found the record clearly showed the investigatory stop was based upon the results obtained from the first check of the temporary tag, and, at the time the officer pulled the vehicle over, the officer believed the temporary tag was registered to a different vehicle and had expired. The court also found there was no evidence that the original check of the wrong temporary tag number was other than an isolated mistake. Therefore, the appellate court found, at the time the officer discovered that the driver was driving under suspension, the officer was still operating within the scope of a justified stop because no intervening event had yet alerted him that his reason for the initial stop was invalid.
 {¶ 16} As in Young, Kaszas, and Keilback, in the present case, Trooper Shearer did not discover his mistake until after he had already observed appellant's condition and suspected appellant was driving while intoxicated. There is no dispute that, at the time he pulled over the vehicle and observed appellant's condition, Trooper Shearer believed the road upon which appellant was driving was a public thoroughfare. There is also no evidence that Trooper Shearer's error was other than an isolated mistake. Appellant makes no claim that Trooper Shearer's mistake was merely a pretense and part of a deceptive course of conduct. Therefore, as the courts found in the above cases, at the time Trooper Shearer discovered that appellant was driving while intoxicated, he was still operating within the scope of a justified stop because no intervening event had yet alerted him that his reason for the initial stop was invalid. Thus, the officer's stop was valid.
 {¶ 17} Further, it must be pointed out that Trooper Shearer's error in the present case, like those in the cases cited above, was a mistake of fact and not a mistake of law. The United States Supreme Court has held that a police officer's mistake of fact will not lead to the suppression of evidence where the mistake was "understandable" and a reasonable response to the situation facing the police officer. Hill v. California (1971),401 U.S. 797, 804, 91 S.Ct. 1106. Here, Trooper Shearer did not believe that the law permitted him to cite a driver for going through a stop sign when on private property. He knew R.C. 4511.43 did not authorize such. Nor was there any evidence that Trooper Shearer believed that there existed signage on the property consistent with R.C. 4511.432 that would have allowed him to enforce the stop sign. Rather, Trooper Shearer did not know that the stop sign was located on private property and believed the street to be a public roadway. Thus, Trooper Shearer's error was a mistake of fact. Trooper Shearer's belief that the roadway was public was also understandable and reasonable, given his testimony and the photographic evidence in the record demonstrate that both the street sign and stop sign were identical to the signage required by state law and there was no sign at the beginning of the road to indicate it was private. For the foregoing reasons, we find appellant's stop was not violative of the Fourth Amendment, and appellant's first assignment of error is overruled.
 {¶ 18} Appellant argues in her second assignment of error that the trial court erred in overruling her motion to dismiss for improper venue after the court had already litigated the issue and the state failed to file a timely appeal. On June 6, 2002, appellant was charged with the same violations in a different case filed in the Franklin County Municipal Court. Apparently, that case was subsequently dismissed after the court found that the Delaware Municipal Court was the proper venue. The present case was then filed in Franklin County Municipal Court. On October 1, 2002, appellant filed a motion to dismiss the current case, which the trial court denied. Appellant's apparent argument under the current assignment of error is that the issue of proper venue is res judicata because the Franklin County Municipal Court had before dismissed the action as being without jurisdiction.
 {¶ 19} However, appellant did not raise this res judicata argument in the court below. In her October 1, 2002 motion to dismiss, appellant's only argument as to why the case should be dismissed was that the officer did not know where the alleged crime occurred, and, thus, there was an inability to determine what county was the situs of the acts. Clearly, this argument is not a res judicata argument. If a party fails to properly raise res judicata, it is waived. State v. Apanovitch (1995),107 Ohio App.3d 82, 89. Thus, appellant has waived this issue for purposes of appeal. We also note that appellant supports her assignment of error with two documents that she has attached to her appellate brief: the entry of dismissal of the action in Delaware Municipal Court and the entry of dismissal in the original filing in Franklin County Municipal Court; however, these documents are not included in the trial court record. A reviewing court cannot add matter to the record before it that was not part of the trial court's proceedings and then decide the appeal on the basis of that new matter. In re Contested Electionof November 2, 1993 (1995), 72 Ohio St.3d 411, 413. Other than these two improperly attached documents, this court has no other documentary record of the proceedings in the two prior cases. Therefore, appellant's second assignment of error is overruled.
 {¶ 20} Accordingly, appellant's two assignments of error are overruled, and the judgment of the Franklin County Municipal Court is affirmed.
Judgment affirmed.
Petree and Sadler, JJ., concur.