[Cite as *State v. Clapper*, 2012-Ohio-1382.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

| STATE OF OHIO | C.A. No. 11CA0031-M |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| CHERIE M. CLAPPER | MEDINA MUNICIPAL COURT COUNTY OF MEDINA, OHIO |
| Appellant | CASE No. 09TRC08463 |

DECISION AND JOURNAL ENTRY

Dated: March 30, 2012

MOORE, Presiding Judge.

{¶1} Appellant, Cherie M. Clapper, appeals from her conviction in the Medina Municipal Court. This Court reverses and remands this matter to the trial court for further proceedings consistent with this opinion.

I.

{¶2} Just after midnight, on October 31, 2009, Cherie M. Clapper had parked her car at a rest stop along Interstate 71. She was alone seated in the driver's seat with the engine running. Trooper Timothy Sankoe of the State Highway Patrol entered the parking lot to perform standard checks on the license plates of the parked vehicles. Upon commencing his patrol of the rest stop, the trooper noticed Clapper's car was parked and running. He was able to determine that the car was occupied by an individual in the driver's seat. Trooper Sankoe then noticed Clapper's brake lights flash approximately four or five times. He parked his cruiser approximately three or four car lengths from Clapper's vehicle, initiated his overhead lights, approached Clapper's vehicle,

and asked for her identification, registration and proof of insurance. Thereafter, based upon Trooper Sankoe's physical observations of and discussion with Clapper, he believed that she was under the influence of alcohol. The trooper performed the Horizontal Gaze Nystagmus test on Clapper, during which he observed six out of six clues. Consequently, Trooper Sankoe arrested Clapper and cited her for an OVI in violation of R.C. 4511.19(A).

{¶3} Clapper initially pleaded not guilty and moved to suppress the evidence as a result of an unjustified stop. The trial court denied the motion, and ultimately Clapper pleaded no contest. The trial court found Clapper guilty and imposed sentence.

{¶4} Clapper timely filed a notice of appeal and presents one assignment of error for our review.

II.

### ASSIGNMENT OF ERROR

THE TRIAL COURT ERRED WHEN IT DENIED AP[P]ELLANT'S MOTION TO SUPPRESS WHERE THERE WAS NO REASONABLE SUSPICION TO STOP AND INVESTIGATE THE APPELLANT FOR OVI[.]

{¶5} In her sole assignment of error, Clapper argues that the trial court erred in determining that the trooper's investigation of Clapper was justified pursuant to the trooper's community caretaking function, and, accordingly, the trial court erred in denying her motion to suppress. We agree.

{¶6} The Ohio Supreme Court has explained the standard of appellate review of a motion to suppress as follows:

Appellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting these facts as true, the appellate court must then

independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard.

(Internal citations omitted.) *State v. Burnside,* 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8.

Investigatory Stops

{¶7} The Fourth Amendment to the United States Constitution and Article I, Section 14, of the Ohio Constitution prohibit law enforcement from conducting unreasonable and warrantless searches and seizures. Courts are required to exclude evidence obtained by means of searches and seizures that are found to violate the Fourth Amendment. *Mapp v. Ohio*, 367 U.S. 643, 657 (1961). When a police officer stops and detains a motorist, the stop is a seizure within the meaning of the Fourth Amendment. *Delaware v. Prouse*, 440 U.S. 648, 653 (1979). To comply with the provisions of the Fourth Amendment in the context of a warrantless investigatory stop, a law enforcement officer "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant" the stop. *Terry v. Ohio*, 392 U.S. 1, 21 (1968).

{¶8} However, "not all personal intercourse between policemen and citizens involves 'seizures' of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." *Terry*, 392 U.S. at 19, fn. 16. For example, "[g]enerally, when a police officer merely approaches and questions persons seated within parked vehicles, a consensual encounter occurs that does not constitute a seizure so as to require reasonable suspicion supported by specific and articulable facts." *State v. Jones*, 188 Ohio App.3d 628, 2010-Ohio-2854, ¶ 20 (10th Dist.). In this context, a seizure occurs when "a reasonable person would be under the impression that he could not refuse assistance and leave the scene at that time." *Stow v. Lauro*, 9th Dist. Nos. 16337, 16342, 1994 WL 119278, *2 (Apr. 6, 1994). In *Lauro*, a police officer

observed the defendant pull into a parking lot, exit his vehicle, and stagger out of his vehicle, looking confused. *Id.* at *1. The officer approached the defendant and asked the defendant, "Can I help you? Are you looking for somebody or are you looking for something? What's the problem?" *Id.* The defendant responded that he was supposed to meet a friend, whose name he could not remember, and the defendant did not know in what city he was currently located. *Id.* During the conversation, the officer noted that the defendant's speech was slurred and his eyes were bloodshot and watery. *Id.* The defendant acquiesced to field sobriety tests and was ultimately charged with driving under the influence. In affirming the trial court's denial of the defendant's motion to suppress, we noted that the officer did not stop the defendant until he asked the defendant to submit to field sobriety tests. *Id.* at *2. The conduct of the officer prior to the stop constituted a consensual encounter, as "[a] simple offer of assistance does not constitute a stop[.]" *Id.*

{¶9} Unlike the facts in *Lauro*, in the case at bar, Trooper Sankoe's initial interaction with Clapper was not consensual. Instead, the trooper testified that he parked his squad car approximately three car lengths from Clapper's vehicle and initiated his overhead lights. He then approached Clapper's driver's side door, and after she rolled down her window, he requested her license, registration and proof of insurance. Under these circumstances, we conclude that the trooper made a sufficient "show of authority" for his initial interaction with Clapper to constitute a stop, and thus a seizure, for purposes of the Fourth Amendment. *See Terry*, 392 U.S. at 19, fn. 16. A reasonable person in Clapper's situation would be under the impression that she "could not refuse assistance and leave the scene," especially in light of the fact that with overhead lights flashing, the officer demanded to see her license and proof of insurance rather than inquiring whether she needed assistance. *See Lauro*, *supra*.

{¶10} Although a seizure of Clapper had occurred, the trooper testified that he had no suspicion that Clapper was engaged in criminal activity. Nonetheless, the trial court denied Clapper's motion to suppress, finding that the trooper's investigation was part of his community caretaking function.

Community Caretaking

{¶11} Encounters between police officers and motorists often occur in the context of the police officer's "community caretaking" functions, which the U.S. Supreme Court described in *Cady v. Dombrowski*, 413 U.S. 433, 441 (1973):

> Because of the extensive regulation of motor vehicles and traffic, and also because of the frequency with which a vehicle can become disabled or involved in an accident on public highways, the extent of police-citizen contact involving automobiles will be substantially greater than police-citizen contact in a home or office. Some such contacts will occur because the officer may believe the operator has violated a criminal statute, but many more will not be of that nature. Local police officers, unlike federal officers, frequently investigate vehicle accidents in which there is no claim of criminal liability and engage in what, for want of a better term, may be described as community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute.

{¶12} Recently, the Ohio Supreme Court reviewed the issue of police community caretaking in *State v. Dunn*, Slip Opinion No. 2012-Ohio-1008. There, an officer received a report that a suicidal male was then driving a tow truck and planning to commit suicide upon reaching a certain location. The Court determined that the officer was justified in stopping the driver as this action fell within the officer's community caretaking function. The Court held that "the community-caretaking/emergency-aid exception to the Fourth Amendment warrant requirement allows police officers to stop a person to render aid if they reasonably believe that there is an immediate need for their assistance to protect life or prevent serious injury." *Id.* at ¶ 22. However, to support the encounter as falling within a "community caretaking" function, "the

police officer must be able to point to reasonable, articulable facts upon which to base his or her safety concerns." *State v. Norman*, 136 Ohio App.3d 46, 54 (3d Dist.1999).

{¶13} "A key community caretaking function is to help motorists who are stranded or in distress." *State v. Chapa*, 10th Dist. No. 04AP-66, 2004-Ohio-5070, ¶ 8. Accordingly, community caretaking functions have been recognized in cases where a vehicle is stationary in an area where it should not be parked, as it gives rise to an inference as to the vehicle's or the driver's impairment. *See, e.g., Bucyrus v. Lewis*, 66 Ohio App.3d 256 (3d Dist.1990) (driver sleeping in vehicle parked in bank's drive-through lane), *State v. Chrzanowski*, 180 Ohio App.3d 324, 2008-Ohio-6993 (11th Dist.) (driver sitting in vehicle stopped on the roadway), *Chapa* (driver stopped her vehicle "in the middle of the roadway with its headlights on and leaving no room for other vehicles to pass.").

{¶14} In this case, Trooper Sankoe testified that he did not suspect Clapper to be engaged in any criminal activity, and he witnessed no traffic violations when he approached her. Instead, Trooper Sankoe testified that he approached Clapper's vehicle because several brief flashes of her taillights indicated to him that she may need assistance. Unlike the facts of the cases cited above, Clapper's vehicle was running, occupied, and properly parked in a public rest stop, a location where it would not be unusual to find parked vehicles. We are unable to discern a concern of safety to the vehicle's occupant or to the public that rationally can be inferred from the tapping of brake lights. *Accord Geneva v. Fende*, 11th Dist. No. 2009-A-0023, 2009-Ohio-6380 (no legitimate safety concern discernible from vehicle leaving closed school's parking lot at 1:30 a.m. and driving twice past officer).

{¶15} Therefore, we conclude that Officer Sankoe engaged in an investigatory stop of Clapper. Further, the officer did not approach Clapper as part of a community caretaking

function. As the trooper acknowledged that he did not possess a reasonable suspicion that Clapper had engaged in criminal activity, the trial court erred in denying Clapper's motion to suppress.

## III.

{¶16} Clapper's assignment of error is sustained. The judgment of the Medina Municipal Court is reversed and this matter is remanded to the trial court for further proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Medina Municipal Court, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

CARLA MOORE
FOR THE COURT

BELFANCE, J.
CONCURS.

CARR, J.
CONCURS IN JUDGMENT ONLY.


APPEARANCES:

PATRICK DICHIRO, Attorney at Law, for Appellant.

GREGORY A. HUBER, Attorney at Law, for Appellee.