[Cite as *State v. Shelley*, 2013-Ohio-1116.]

STATE OF OHIO, COLUMBIANA COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

STATE OF OHIO,                          )
                                        )
     PLAINTIFF-APPELLEE,               )
                                        )     CASE NO. 12 CO 25
V.                                      )
                                        )     OPINION
THOMAS W. SHELLEY,                      )
                                        )
     DEFENDANT-APPELLANT.              )

CHARACTER OF PROCEEDINGS:     Criminal Appeal from Municipal Court of
Columbiana County, Ohio
Case No. 11TRC4381

JUDGMENT:     Affirmed

APPEARANCES:
For Plaintiff-Appellee     Robert L. Herron
Prosecutor
Megan L. Payne
Assistant Prosecutor
38832 Saltwell Road
Lisbon, Ohio 44432

For Defendant-Appellant     Attorney Mark A. Devicchio
3680 Starr Centre Drive
Canfield, Ohio 44406

JUDGES:

Hon. Gene Donofrio
Hon. Joseph J. Vukovich
Hon. Cheryl L. Waite

Dated: March 22, 2013

DONOFRIO, J.

{¶1} Defendant-appellant, Thomas Shelley, appeals from a Columbiana County Municipal Court judgment overruling his motion to suppress the results of his field sobriety tests along with any other evidence obtained as a result of an alleged illegal traffic stop.

{¶2} On September 18, 2011, at approximately 3:19 a.m., Ohio State Trooper Kenneth Metz was on patrol and noticed a Dodge Caravan approximately a quarter-mile ahead of him. The van was stopped at a yield sign on Park Avenue before entering the circle of Park Avenue and Main Street in Columbiana. The van had its right turn signal on and there was no other traffic. Trooper Metz approached the van and stopped behind it. The trooper waited approximately 13 seconds and, when the van still did not proceed, activated his overhead lights. The van drove forward approximately 50 feet and then pulled over to the right of the road.

{¶3} Trooper Metz approached the van. Appellant was sitting in the driver's seat. Trooper Metz spoke to appellant. He noticed appellant's eyes were bloodshot and the trooper smelled a strong odor of an alcoholic beverage. The trooper then asked appellant to exit his vehicle. The two walked to the front of the trooper's car and Trooper Metz asked appellant if he had any alcohol earlier. Appellant told Trooper Metz that he had consumed "a couple, three, beers."

{¶4} Appellant performed the HGN test, the one-leg-stand test, and the walk-and-turn test. The trooper noted six of six clues on the HGN test, two of four clues on the one-leg-stand test, and two of eight clues on the walk-and-turn test. The trooper then had appellant blow into a portable breath tester that indicated appellant had alcohol in his system. The trooper subsequently placed appellant under arrest for operating a motor vehicle while intoxicated (OMVI).

{¶5} Trooper Metz then transported appellant to the Highway Patrol Post in Lisbon. At the Highway Patrol Post, appellant submitted to a breath test. Appellant's breath test reflected a blood alcohol concentration level of .166.

{¶6} Trooper Metz issued appellant a citation for OMVI in violation of R.C. 4511.19(A)(1)(a) and (d). Appellant appeared in court and entered a not guilty plea.

{¶7} Appellant then filed a motion to suppress the results of his field sobriety tests along with any other evidence obtained as a result of his alleged illegal detention. In his motion, appellant argued that Trooper Metz lacked reasonable suspicion to stop him and did not observe any traffic violations that would warrant a stop.

{¶8} The trial court held a hearing on appellant's motion where it heard testimony from Trooper Metz. The court subsequently denied the motion to suppress.

{¶9} Appellant then changed his plea to no contest. The trial court found him guilty of OMVI. It sentenced him to 30 days in jail, with 27 days suspended and the option of attending a three-day educational alternative instead of jail, imposed a $675 fine, and suspended appellant's driver's license for six months.

{¶10} Appellant filed a timely notice of appeal on June 22, 2012. The trial court stayed appellant's sentence pending this appeal.

{¶11} Appellant raises a single assignment of error, which states:

THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT BY OVERRULING DEFENDANT-APPELLANT'S MOTION TO SUPPRESS AND SUPPLEMENTAL MOTION TO DISMISS / MOTION IN LIMINE / MOTION TO SUPPRESS, DUE TO THE FACT THAT THE STOP WAS NOT WITHIN THE COMMUNITY CARETAKING FUNCTION OF LAW ENFORCEMENT, WAS NOT CONSENSUAL, AND THE TROOPER DID NOT HAVE A REASONABLE, ARTICULABLE SUSPICION TO BELIEVE THAT DEFENDANT-APPELLANT WAS ENGAGING IN ILLEGAL ACTIVITY AT THE TIME OF THE STOP.

{¶12} Appellant argues that the trial court misapplied the facts in this case to the cases it relied on in its decision. He contends that Trooper Metz's stop was an investigative stop, which was only permissible when supported by reasonable

suspicion. Appellant asserts that Trooper Metz never pointed to a particular fact or circumstance that gave rise to his alleged suspicion that appellant needed assistance other than appellant's delay in travel. Appellant further points out that when Trooper Metz activated his lights, appellant drove his vehicle to a stop in an appropriate manner with no signs of erratic or impaired driving. And appellant points out that once Trooper Metz stopped him, the trooper never asked if appellant needed assistance and only had a brief conversation with him before asking him to perform the field sobriety tests. Appellant asserts that the only "fact" that Trooper Metz offered in support of his decision to stop appellant was that he observed appellant's vehicle stopped in the lane of traffic for an extended time when it was safe to proceed through the intersection.

{¶13} Our standard of review with respect to a motion to suppress is first limited to determining whether the trial court's findings are supported by competent, credible evidence. *State v. Winand*, 116 Ohio App.3d 286, 288, 688 N.E.2d 9 (7th Dist.1996), citing *Tallmadge v. McCoy*, 96 Ohio App.3d 604, 608, 645 N.E.2d 802 (9th Dist.1994). Such a standard of review is appropriate as, "[i]n a hearing on a motion to suppress evidence, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and evaluate the credibility of witnesses." *State v. Venham*, 96 Ohio App.3d 649, 653, 645 N.E.2d 831 (4th Dist.1994). An appellate court accepts the trial court's factual findings and relies upon the trial court's ability to assess the witness's credibility, but independently determines, without deference to the trial court, whether the trial court applied the appropriate legal standard. *State v. Rice*, 129 Ohio App.3d 91, 94, 717 N.E.2d 351 (7th Dist.1998). A trial court's decision on a motion to suppress will not be disturbed when it is supported by substantial credible evidence. *Id*.

{¶14} In this case, the trial court made the following relevant factual findings. At approximately 3:19 a.m., Trooper Metz noticed a stopped Dodge Caravan in the westbound lane of traffic approximately one-quarter of a mile ahead of his cruiser. The van was stopped at a yield sign before entering the circle of Park Avenue and

Main Street. The van remained stopped as Trooper Metz approached. It had its right turn signal on and no traffic was impeding the van's ability to enter the circle of Park and Main. Trooper Metz came to a stop behind the van and waited approximately 13 seconds before activating his cruiser lights. Because he had observed the van stopped in the lane of traffic for a long time after it should have proceeded, Trooper Metz was concerned about mechanical problems with the vehicle or the health of the operator. Upon activating the cruiser lights, the van pulled forward and to the right approximately 50 feet and then stopped.

{¶15} Trooper Metz observed no criminal activity but did observe the van parked in the lane of traffic for an extended time when it was safe to proceed through the circle intersection. Trooper Metz approached the van and commented to appellant that his van was sitting in the roadway. Appellant told Trooper Metz that he had been sending a text message on his phone. During the conversation, Trooper Metz noticed a strong odor of alcohol coming from appellant's breath and that appellant's eyes were blood shot. Appellant admitted to consuming a couple or three beers. Trooper Metz then had appellant submit to field sobriety tests.

{¶16} The evidence at the hearing supports these factual findings. At the hearing Trooper Metz testified as follows.

{¶17} While he was travelling westbound on Park Avenue, approximately a quarter-mile ahead of him, Trooper Metz noticed appellant's vehicle stopped at the circle in the same lane of traffic. (Tr. 7). As he approached appellant's vehicle, Trooper Metz observed that there was no other traffic around. (Tr. 7). Trooper Metz came to a stop behind appellant's vehicle and waited 13 seconds. (Tr. 7, 24-25). He then activated his overhead lights. (Tr. 7-8). Appellant pulled forward and to the right approximately 50 feet and then stopped. (Tr. 8).

{¶18} Trooper Metz got out of his car and approached appellant. They had a brief conversation consisting of Trooper Metz asking appellant why he was parked in the road and appellant telling him that he was looking at his phone in order to send a text message. (Tr. 32-33). Trooper Metz stated he could smell the odor of an

alcoholic beverage and appellant's eyes were bloodshot. (Tr. 9). At this point, Trooper Metz asked appellant to step out of his vehicle. (Tr. 10). Appellant complied and walked to the front of Trooper Metz's car. (Tr. 10). The trooper then asked appellant if he consumed any alcohol and appellant told him that he had two or three beers. (Tr. 10).

{¶19} Trooper Metz stated that his reason for stopping appellant was to check on him. (Tr. 7-8, 18). He elaborated that he did not know why appellant was sitting there and that he routinely checks stopped cars because the driver may be asleep, there could be a medical problem, there could be a car problem, or there could be impairment. (Tr. 18). Trooper Metz further stated there were no other vehicles to stop appellant's movement, appellant had his right turn signal on, there was no reason for appellant to be stopped that long, and the trooper felt the need to check on appellant. (Tr. 26). He also stated that he did not observe appellant commit any moving violations. (Tr. 24). However, after stopping appellant, Trooper Metz did not ask him if he needed assistance. (Tr. 32).

{¶20} Trooper Metz also testified that after he activated his overhead lights, appellant turned right into the circle and operated his vehicle in a reasonable and appropriate manner in coming to a stop. (Tr. 29).

{¶21} Because the evidence supports the trial court's factual findings, we must next determine whether the trial court properly applied the law to these facts.

{¶22} "The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution prohibit unreasonable searches and seizures, including unreasonable automobile stops." *Bowling Green v. Godwin*, 110 Ohio St.3d 58, 850 N.E.2d 698, 2006-Ohio-3563, ¶11. In order to make an investigative traffic stop, an officer must have a reasonable suspicion, based on specific and articulable facts, that the motorist was engaged in criminal activity or that the vehicle was in violation of the law. *State v. Snyder*, 7th Dist. No. 03 BE 15, 2004-Ohio-3200, ¶5, citing *Dayton v. Erikson*, 76 Ohio St.3d 3, 12, 665 N.E.2d1091 (1996); *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

**{¶23}** But police may also stop a vehicle pursuant to their community caretaker function. The Ohio Supreme Court recently examined the community caretaker function in *State v. Dunn*, 131 Ohio St.3d 325, 2012-Ohio-1008, 964 N.E.2d 1037, ¶17:

> The [United State Supreme Court in *Cady v. Dombrowski*, 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973)] court explained that local law-enforcement officers "frequently investigate vehicle accidents in which there is no claim of criminal liability and engage in what, for want of a better term, may be described as community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." *Id.* at 441, 93 S.Ct. 2523, 37 L.Ed.2d 706. As the court noted in *Dombrowski*, "[t]he ultimate standard set forth in the Fourth Amendment is reasonableness." *Id.* at 439, 93 S.Ct. 2523, 37 L.Ed.2d 706. Thus, the Fourth Amendment protects citizens from only unreasonable government searches and seizures. *United States v. Sharpe*, 470 U.S. 675, 682, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985).

**{¶24}** And in *State v. Norman*, 136 Ohio App.3d 46, 54, 735 N.E.2d 953 (3d Dist.1999), the court also described the community caretaking function as it relates to traffic stops:

> Police officers without reasonable suspicion of criminal activity are allowed to intrude on a person's privacy to carry out "community caretaking functions" to enhance public safety. The key to such permissible police action is the reasonableness required by the Fourth Amendment. When approaching a vehicle for safety reasons, the police officer must be able to point to reasonable, articulable facts upon which to base her safety concerns. Such a requirement allows a reviewing

court to answer *Terry's* fundamental question in the affirmative: "would the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?" 392 U.S. at 21-22, 88 S.Ct. at 1880, 20 L.Ed.2d at 906.

**{¶25}** In this case, the trial court found that the stop was consensual and that a reasonable officer in this situation would believe that the vehicle or the occupant may need assistance. The court noted that Trooper Metz observed the vehicle stopped at a yield sign as he drove approximately a quarter of a mile toward the vehicle. He then stopped behind the vehicle and waited another 13 seconds before activating his overhead lights. There was no other traffic, the vehicle had its right turn signal on, and it continued to remain stationary during the entire period of observation. The court concluded that under these circumstances it was reasonable to believe the driver needed assistance or the vehicle was disabled. Thus, the court found the community caretaker exception applied here.

**{¶26}** The trial court also relied on this court's case of *State v. Hlinovsky*, 7th Dist. No. 09-BE-19, 2011-Ohio-6421, in determining that the initial stop here was consensual.

**{¶27}** In *Hlinovsky*, the trooper observed the defendant's vehicle traveling very slowly on U.S. 40 around 3:00 a.m. The trooper caught up to the vehicle. The vehicle pulled off to the side of the road. The trooper passed it, and then saw the vehicle turn its headlights off. This caught the trooper's attention and he wanted to find out what was going on. So the trooper turned around and pulled behind the vehicle. He called the stop in as a disabled vehicle and got out to check on the occupants' well-being. Upon making contact with the occupants, the trooper smelled alcohol. This ultimately led to an OMVI arrest. The trial court denied the defendant's motion to suppress evidence from the stop.

**{¶28}** On appeal, we found that the initial encounter between the trooper and the defendant was a consensual encounter, rather than an investigatory stop

requiring reasonable suspicion. We noted that the trooper did not actually initiate a traffic stop; instead, he approached a vehicle that had pulled to the side of the road and parked in order to ask the occupants some questions. *Id.* at ¶58. We stated that a police encounter is consensual when a person is free to walk away from the officer and may refuse to answer questions. *Id.* at ¶53, citing *U.S. v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). And we noted that in general, when an officer merely approaches and questions a person in a parked vehicle, it is a consensual encounter that is not a seizure so as to require reasonable suspicion. *Id.* at ¶55. We further found that the trooper was carrying out his community caretaker function in assisting a potentially disabled vehicle. *Id.* at ¶64.

{¶29} In the case at bar, the trial court found the stop to be consensual based on *Hlinovsky*. But the present case is distinguishable. In this case, Trooper Metz pulled up behind appellant and activated his overhead lights. He then followed appellant, with his overhead lights on, to the side of the road. (Tr. 7-8, 28). And once appellant pulled over, the trooper asked to see his driver's license. (Tr. 10, 31). Additionally, Trooper Metz did not inquire if appellant needed assistance. (Tr. 32-33). Thus, Trooper Metz did not "merely approach" appellant, he used his overhead lights and request for a driver's license as a show of authority that appellant was not free to leave. See *State v. Clapper*, 9th Dist. No. 11CA0031-M, 2012-Ohio-1382 (reasonable person in defendant's situation would be under the impression that she "could not refuse assistance and leave the scene," when, with overhead lights flashing, the officer demanded to see her license and proof of insurance rather than inquiring whether she needed assistance).

{¶30} But even though the trial court erred in finding the stop was consensual, the decision to deny the motion to suppress was still proper because of the community caretaker function.

{¶31} In *Clapper*, 2012-Ohio-1382, ¶13, the court observed that the community caretaker function has been applied in cases where a vehicle was stationary in a place where it should not be parked because it gave rise to an

inference of the vehicle's or the driver's impairment. Citing, *Bucyrus v. Lewis*, 66 Ohio App.3d 256, 583 N.E.2d 1114 (3d Dist.1990) (driver sleeping in vehicle parked in bank's drive-through lane), *State v. Chrzanowski*, 180 Ohio App.3d 324, 2008-Ohio-6993, 905 N.E.2d 266 (11th Dist.) (driver sitting in vehicle stopped on the roadway), *State v. Chapa*, 10th Dist. No. 04AP-66, 2004-Ohio-5070 (driver stopped her vehicle "in the middle of the roadway with its headlights on and leaving no room for other vehicles to pass").

**{¶32}** This case is similar to the other "parked car" cases. Here Trooper Metz observed appellant's vehicle from a quarter of a mile away stopped at a yield sign. Once Trooper Metz stopped behind appellant's vehicle, it remained stopped for another 13 seconds until Trooper Metz activated his overhead lights. During this time, there was no traffic that would have prevented appellant from continuing on his way. (Tr. 7, 26). And appellant was blocking Trooper Metz from proceeding without driving around him into the wrong lane of traffic. (Tr. 8, 26). Also during this time, appellant's right turn signal was on. (Tr. 26). Based on these considerations, Trooper Metz felt he should "check on" appellant. (Tr. 26).

**{¶33}** Appellant contends that once he began to drive away, after seeing Trooper Metz's overhead lights, this should have alleviated the trooper's concerns regarding a possible medical emergency or disabled vehicle. Thus, he asserts the trooper should not have stopped him. But at the time Trooper Metz activated his overhead lights, he had a legitimate concern about the condition of the van and its driver. This concern did not immediately vanish when the van began to drive away. Once Trooper Metz's concern was aroused and he made the decision to check on appellant, it was reasonable for him to follow through with checking on the van and its driver.

**{¶34}** The trooper's actions here were reasonable under the Fourth Amendment. He was able to point to reasonable, articulable facts upon which to base his concern for checking on the driver and the vehicle. The facts articulated by the trooper demonstrate concern over whether the vehicle was having trouble or the

driver required some sort of assistance.   As such, the trial court properly overruled appellant's motion to suppress based on the community caretaker function.

{¶35}  Accordingly, appellant's sole assignment of error is without merit.

{¶36}  For the reasons stated above, the trial court's judgment is hereby affirmed.

Vukovich, J., concurs.

Waite, J., concurs.