[Cite as *State v. Mackim*, 2018-Ohio-3033.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

STATE OF OHIO

    Appellee

v.

KIMBERLY MACKIM

    Appellant

C.A. No.     28741

APPEAL FROM JUDGMENT
ENTERED IN THE
BARBERTON MUNICIPAL COURT
COUNTY OF SUMMIT, OHIO
CASE No.    16 TRC 4025

DECISION AND JOURNAL ENTRY

Dated: August 1, 2018

---

CALLAHAN, Judge.

{¶1} Appellant, Kimberly Mackim, appeals from her conviction for operating a vehicle under the influence of alcohol ("OVI") in the Barberton Municipal Court. For the reasons set forth below, this Court reverses.

I.

{¶2} A New Franklin patrolman ("the Officer") responded to a call from a gas station owner regarding a woman, Ms. Mackim, who was asleep in the driver's seat of a truck parked in the gas station parking lot. After briefly questioning Ms. Mackim, the officer administered field sobriety tests to her and subsequently arrested her for OVI pursuant to R.C. 4511.19(A)(1)(a).

{¶3} Ms. Mackim filed a motion to suppress and a hearing was held. Ms. Mackim challenged the following: 1) the Officer's initial contact with Ms. Mackim as being a community caretaking function, 2) the Officer's compliance with the NHTSA standards in administering the field sobriety tests, 3) the Officer's reasonable suspicion to detain her to administer the field

sobriety tests, and 4) the Officer's probable cause to arrest her.  At the conclusion of the hearing, the trial court took the matter under advisement and permitted the parties to file post-hearing briefs.

{¶4}  On the record at a pre-jury conference, the trial court orally granted Ms. Mackim's motion to suppress the field sobriety test results and the Officer's expert opinions regarding Ms. Mackim's impairment based on the test results. The trial court denied the remainder of Ms. Mackim's motion to suppress.  The trial court did not journalize the suppression decision.  Ms. Mackim proceeded to a jury trial and was found guilty of OVI.

{¶5}  Ms. Mackim has timely appealed her conviction and raises three assignments of error.

II.

**ASSIGNMENT OF ERROR NO. 1**

THE TRIAL COURT ERRED WHEN IT DENIED, IN PART, [MS. MACKIM'S] MOTION TO SUPPRESS.

{¶6}  Ms. Mackim asserts that the trial court erred in denying her motion to suppress by finding that the Officer engaged in a community caretaking encounter, by finding that the Officer had reasonable suspicion to detain her and to administer field sobriety tests, and by finding that the Officer had probable cause to arrest her.  To the extent that Ms. Mackim argues that the initial encounter exceeded the scope of any community caretaking function, this Court agrees. This Court, however, is unable to reach the remaining arguments.

{¶7}  A motion to suppress evidence presents a mixed question of law and fact.  *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8.  "When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses."  *Id*., citing *State v. Mills*, 62 Ohio

St.3d 357, 366 (1992). Thus, a reviewing court "must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Burnside* at ¶ 8, citing *State v. Fanning*, 1 Ohio St.3d 19, 20 (1982). "Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Burnside* at ¶ 8, citing *State v. McNamara*, 124 Ohio App.3d 706, 710 (4th Dist.1997). Therefore, this Court grants deference to the trial court's findings of fact, but conducts a de novo review of whether the trial court applied the appropriate legal standard to those facts. *State v. Booth*, 151 Ohio App.3d 635, 2003-Ohio-829, ¶ 12 (9th Dist.).

{¶8} The community caretaking function is an exception to the Fourth Amendment warrant requirement that permits "'police officers to stop a person to render aid if they reasonably believe that there is an immediate need for their assistance to protect life or prevent serious injury.'" *State v. Clapper*, 9th Dist. Medina No. 11CA00031-M, 2012-Ohio-1382, ¶ 12, quoting *State v. Dunn*, 131 Ohio St.3d 325, 2012-Ohio-1008, ¶ 22. "Police officers without reasonable suspicion of criminal activity are allowed to intrude on a person's privacy to carry out community caretaking functions to enhance public safety." (Internal quotation marks omitted.) *State v. Thompson*, 9th Dist. Lorain No. 04CA008603, 2005-Ohio-3802, ¶ 10, quoting *State v. Norman*, 136 Ohio App.3d 46, 54 (3d Dist.1999). "When approaching a vehicle for safety reasons, the police officer must be able to point to reasonable, articulable facts upon which to base [the] safety concerns." *Norman* at 54.

{¶9} On the other hand, in order to administer field sobriety tests, a police officer must have a reasonable suspicion of criminal activity. *State v. Slates*, 9th Dist. Summit No. 25019, 2011-Ohio-295, ¶ 24. "'Reasonable suspicion' is more than an ill-defined hunch * * *." *State v.*

*Hunter*, 151 Ohio App.3d 276, 2002-Ohio-7326, ¶ 31 (9th Dist.). "'[R]easonable suspicion exists if an officer can point to specific and articulable facts indicating that [an individual] may be committing a criminal act.'" *State v. Osburn*, 9th Dist. Wayne No. 07CA0054, 2008-Ohio-3051, ¶ 9, quoting *Wadsworth v. Engler*, 9th Dist. Medina No. 2844-M, 1999 Ohio App. LEXIS 5993, *9 (Dec. 15, 1999). "Reasonable suspicion is based on the totality of the circumstances." *State v. Hochstetler*, 9th Dist. Wayne No. 16AP0013, 2016-Ohio-8389, ¶ 10.

{¶10} The Officer testified that dispatch received a call from the owner of the gas station describing a truck that was parked in the gas station lot by the dumpster with "a female [] passed out behind the wheel of her vehicle." The gas station owner indicated that the truck had been in the parking lot for 20 to 25 minutes and he wanted the driver to leave the premises. The Officer testified that he arrived at the gas station at approximately 10:00 a.m. and found the truck parked by the dumpster and a woman passed out in the driver's seat. The Officer testified and his body camera footage showed that the Officer approached the truck and knocked on the driver's side window to rouse the driver, Ms. Mackim, who was sitting sideways and leaning over towards the middle console with her back to the driver's door. The body camera footage shows Ms. Mackim sit up and turn forward in the driver's seat and then open the driver's side door. The Officer inquired about what Ms. Mackim was doing, to which she replied that she was "laying down" "taking a break" "because [she] didn't feel good."

{¶11} When Ms. Mackim opened the door and spoke, the Officer detected an "odor of alcohol coming from her, around her person." The Officer testified that the odor of alcohol "alerted [him] that there was some sort of [] drinking going on." The Officer then asked Ms. Mackim for her driver's license, but she handed him her credit card instead. The Officer testified that the production of something other than the driver's license is another indicator of alcohol

involvement. Based on these two indicators, the Officer asked Ms. Mackim to step out of the truck so he could "run her through field sobriety tests."

{¶12} The Officer's body camera shows that once Ms. Mackim was outside the truck, she admitted to drinking the night before. The Officer then began to administer the field sobriety tests. The trial court, however, found that "[Ms. Mackim] did admit to drinking the night before, and at that point, the [O]fficer asked Ms. Mackim to then step out of her [truck] to perform field sobriety tests." Based on the body camera footage, the trial court's chronology of these events is incorrect. Consequently, the trial court's finding of fact on this point is not supported by competent and credible evidence and is rejected by this Court. *See State v. Bramley*, 9th Dist. Medina No. 17CA0033-M, 2017-Ohio-8512, ¶ 15.

{¶13} Nonetheless, the Officer's testimony from the suppression hearing and his body camera footage support the trial court's findings of fact that the Officer "was called to the scene with reference to a[n ] unwanted visitor that had pulled into a gas station parking lot [] and then proceeded to fall asleep, pass out" and the gas station owner wanted the police "to look into why that person was there and ostensibly to have them removed." Accordingly, those findings of fact regarding community caretaking are supported by competent, credible evidence and are accepted as true.

{¶14} Taking these facts as true, this Court "independently determine[s], without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *See Burnside,* 100 Ohio St.3d 152, 2003-Ohio-5372, at ¶ 8, citing *McNamara*, 124 Ohio App.3d at 710. In this case, the Officer was called to the gas station to check on Ms. Mackim who was asleep or passed out in her truck and, thus, was responding to a call about a driver possibly being in distress. *See Clapper*, 2012-Ohio-1382, at ¶ 13 (recognizing that the

community caretaking function applies to officers helping drivers who are in distress). Accordingly, the Officer had "reasonable, articulable facts upon which to base [his] safety concerns" for Ms. Mackim and to approach her vehicle and speak with her under the community caretaking function. *See Norman*, 136 Ohio App.3d at 54.

{¶15} However, because according to the Officer's own testimony that the nature of his encounter with Ms. Mackim changed early on in his interaction with her, the trial court erroneously extended its fact finding and analysis under the community caretaking function to the finding of probable cause, foregoing any discussion of reasonable suspicion. While the Officer's initial contact and focus was based upon Ms. Mackim's welfare under the community caretaking function, he testified that he "smelled [alcohol] when [Ms. Mackim] was in the vehicle when [he] first made contact with her" and this "alerted" him that there was "drinking going on" despite Ms. Mackim's initial statement that she was sick. The Officer testified that he did not believe Ms. Mackim was ill. Moreover, the Officer stated that a claim of illness "doesn't take away the fact [that] the smell of the alcohol" was present. According to the Officer, upon smelling alcohol on Ms. Mackim inside her truck, he believed she was under the influence and asked her if she had been drinking, which she denied. Ms. Mackim then handed the Officer her credit card instead of her driver's license. In light of these two "indicator[s]," the Officer "made [up his] mind that [he] was pulling [Ms. Mackim] out of the vehicle and rendering [sic.] her to do some tests."

{¶16} Courts have repeatedly held that when the initial nature of the encounter is expanded to an investigatory detention the officer must possess reasonable suspicion of criminal activity for that detention. *See State v. Martin*, 9th Dist. Summit No. 28722, 2018-Ohio-1705, ¶ 12 ("when a consensual encounter later results in an investigatory detention, that detention must be supported by reasonable suspicion"). *See also State v. Saunders*, 5th Dist. Muskingum No.

CT2017-0052, 2018-Ohio-2624, ¶ 28; *State v. Windle*, 4th Dist. Athens No. 16CA1, 2017-Ohio-7813, ¶ 33, 35. "[B]ecause some contacts that start out as constitutional may at some point cross a line and become an unconstitutional seizure," it is necessary to examine the constitutionality of the next stage of the stop. *Saunders* at ¶ 26. Based on the Officer's testimony, it was necessary for the trial court to make findings of fact and conclusions of law regarding whether the Officer had a reasonable suspicion of criminal activity that would support his administering field sobriety tests. The trial court, however, failed to do so. In light of the absence of findings of fact relative to reasonable suspicion to administer field sobriety tests, this Court cannot conclude the trial court's findings of fact are supported by competent, credible evidence.

{¶17} Additionally, the trial court's findings of fact as to probable cause to arrest Ms. Mackim are incomplete. With regard to probable cause, the trial court relied on the odor of alcohol and "some of the responses and some of the things" it viewed on the body camera footage. The trial court's reference to "*some* of the *responses* and *some* of the *things*" is vague and provides this Court with no information as to which factors it found to support its finding that there was probable cause to arrest Ms. Mackim. (Emphasis added.) *See State v. Trivett*, 9th Dist. Medina No. 15CA0041-M, 2016-Ohio-8204, ¶ 7-8 (findings of fact are incomplete when they fail to include pertinent facts that were presented during the hearing and which are necessary to conduct the legal analysis). In the absence of necessary findings of fact, this Court cannot conclude the trial court's findings of fact as to probable cause to arrest are supported by competent, credible evidence.

{¶18} Having concluded that the trial court erred by extending the community caretaking function beyond what is allowable under the law and failing to make findings of fact as to reasonable suspicion to administer field sobriety tests and probable cause to arrest, we conclude

that the trial court erred in denying Ms. Mackim's motion to suppress. Because the trial court has failed to adequately set forth its findings of fact and failed to apply the correct law, this Court cannot properly review the suppression decision. Accordingly, this Court must remand this case to the trial court to set forth its findings of fact with regard to reasonable suspicion to administer field sobriety tests and probable cause to arrest.

{¶19} Ms. Mackim's first assignment of error is sustained.

### ASSIGNMENT OF ERROR NO. 2

THE TRIAL COURT ERRED WHEN IT RULED THAT [MS. MACKIM] COULD NOT CROSS [EXAMINE] THE [] OFFICER ON ANY OF HIS NHTSA TRAINING DURING THE JURY TRIAL.

### ASSIGNMENT OF ERROR NO. 3

THE JURY VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE PRESENTED AT TRIAL.

{¶20} In the second assignment of error, Ms. Mackim contends that the trial court erred in precluding her from cross examining the Officer regarding his NHTSA training. In the third assignment of error, Ms. Mackim argues that her conviction is against the manifest weight of the evidence because the State failed to present evidence that she was impaired. Due to this Court's resolution of Ms. Mackim's first assignment of error, her second and third assignments of error are premature and this Court declines to address them.

III.

{¶21} Ms. Mackim's first assignment of error is sustained. This Court declines to address the second and third assignments of error because they are premature. The judgment of the Barberton Municipal Court is reversed and the cause is remanded for proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Barberton Municipal Court, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

LYNNE S. CALLAHAN
FOR THE COURT

TEODOSIO, P. J.
CONCURS.

CARR, J.
CONCURRING IN JUDGMENT ONLY.

{¶22} I would reverse and remand on the basis of the rationale articulated in *State v Dennis*, 9th Dist. Summit No. 27692, 2016-Ohio-8136.

APPEARANCES:

JOHN T. FORRISTAL, Attorney at Law, for Appellant.

JENNIFER ROBERTS, Prosecuting Attorney, for Appellee.